Argued and submitted April 20, affirmed October 19, 1988

# OREGON SCHOOL EMPLOYEES ASSOCIATION,
*Respondent,*

*v.*

# LAKE COUNTY SCHOOL DISTRICT,
*Petitioner.*

(C-202-83; CA A45200)

763 P2d 160

Nancy Hungerford, Sunriver, argued the cause for petitioner. On the brief was Bruce Bischof, Sunriver.

Paul B. Meadowbrook, Salem, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Petitioner (District) seeks review of an Employment Relations Board order which, pursuant to our decision in *OSEA v. Lake County School District,* 81 Or App 623, 726 P2d 955 (1986), determined the "appropriate remedy" for an unfair labor practice of District involving two employes whom it had discharged. We had held that the undisclosed "personal notes" of district's school principal, which documented the job performance and attitude of the employes, were "personnel records" within the meaning of the parties' collective bargaining agreement and that District had violated Article III[1] of that agreement and ORS 243.672(1)(g)[2] by maintaining the undisclosed records. We remanded to ERB for determination of the "appropriate remedy."

On remand, Oregon School Employees Association (OSEA) urged that reinstatement and back pay were appropriate remedies. It argued that District's failure to disclose the notes deprived the employes of notice and warning of the principal's dissatisfaction with their performance and, therefore, of opportunities to seek assistance, request transfers, change their behavior or take other job-saving actions before their discharge. In response, District argued that, because the collective bargaining agreement with OSEA did not contain a

---

[1] Article III provided:

"1.  The personnel records of any employee in the bargaining unit shall be maintained in the Districts personnel office. *Such personnel records shall not contain any information of a critical nature that does not bear the employee's signature or initials indicating that the employee has been shown the material.* An employee shall have the right to attach a written statement of explanation to any material which the employee believes to be incorrect. * * *

"2.  The District agrees that it is an employee's right under the law to inspect his or her personnel file. Upon the request of an employee the District agrees to remove all records five (5) years from the date of its entry." (Emphasis supplied.)

[2] ORS 243.672(1) provides, in part:

"It is an unfair labor practice for a public employer or its designated representatiave to do any of the following:

"* * * * *

"(g) Violate the provisions of any written contract with respect to employment relations including an agreement to arbitrate or to accept the terms of an arbitration award, where previously the parties have agreed to accept such awards as final and binding upon them."

"just cause" clause, the employes could have been discharged for any reason and had no "right" to their jobs and that reinstatement would give them more rights than they originally possessed under the contract. District also argued that, because the notes were not "used" against the employes, reinstatement and back pay would be a disproportionate and, therefore, an inappropriate remedy.

ERB ordered District to offer reinstatement and back pay to the employes, to cease and desist from maintaining the principal's personnel records and all related disciplinary records concerning the two employes and to expunge them from its files.[3] It stated:

> "The question before us is not whether these employes could have been terminated without warning or cause, nor whether the termination decision itself was free from the taint of reliance on the unlawfully maintained personnel records. Rather, the question is whether the violation of the personnel records article of the contract deprived Merrill and Steward of a benefit or advantage which could have materially affected their prospects for continued employment with the District.
>
> "* * * * *
>
> "If the possibility existed, no matter how remote, that Merrill and Steward could have successfully acted to save their jobs, then the remedy for denying them that opportunity must be reinstatement."

It found:

> "[I]t is clear that the terminations were 'for cause' and that the cause was directly related to the undisclosed personnel records. It is equally clear, although the evidence is sparse, that Merrill and Steward were not otherwise given the notice

---

[3] ERB's order provides:

"1. The District shall cease and desist from violating Article III of the OSEA-District collective bargaining agreement.

"2. The District shall expunge from its files, wherever located, Principal Crawford's personnel records as well as all related disciplinary records concerning Merrill and Steward.

"3. The District shall offer reinstatement to Merrill and Steward and make them whole for all lost compensation and benefits from the date of their termination until the date of their reinstatement or the date on which reinstatement is declined less unemployment benefits and other compensation earned during the period. Back pay shall include interest at nine percent per annum from the last day of the respective months not worked until paid."

and warning that would have been provided had the records been presented to them as required by the contract.

"Because they had no access to or knowledge of the critical personnel records, Merrill and Steward were denied Association assistance and representation, denied the opportunity to grieve the personnel record entries and attach written rebuttals, and, most importantly, denied the chance to stop behaving in a manner that was obviously viewed by Crawford as improper."

It concluded:

"[T]he District's violation of the personnel records provision of the parties' collective bargaining agreement (the purpose of which is to require timely disclosure of, and an opportunity to inspect and respond to, the type of critical documents present here) denied Merrill and Steward a substantial contract right. Exercise of that right could have had a significant effect on both their conduct and the District's decision to terminate them. Under the circumstances, the appropriate remedy is reinstatement, because it is this remedy that will give the Association and the employes 'the benefit of their bargain.' "

District assigns as error that ERB ordered it to offer reinstatement and back pay to the employes.[4] It argues that ERB made an error of law when it construed its statutory authorization to "take such affirmative action * * * as necessary to effectuate the purposes of [the Public Employes' Collective Bargaining Act (PECBA)]," ORS 243.676(2)(c), to give it discretion to fashion a remedy that gives the Association and employes "the benefit of their bargain." District asserts that that standard is used in grievance arbitration and is not applicable here, because the statute does not give ERB the same broad range of discretion to fashion a remedy as is commonly given to arbitrators under collective bargaining agreements. Rather, District argues, ERB's authority is limited to giving the parties what it describes as the "benefit of state law." Further, it argues that we should not defer to ERB's judgment or affirm its order, because the remedy it imposes is not "necessary"—that is, not absolutely required—to give the parties that benefit.

---

[4] District only challenges that portion of the remedy which provides for an offer of reinstatement and back pay.

District's argument is not convincing. A primary purpose of PECBA is to encourage the making of and adherence to collective bargaining agreements. *See* ORS 243.656. ORS 243.672(1)(g) makes it an unfair labor practice to "violate the provisions of any written contract with respect to employment relations * * *." ORS 243.676(2)(c) gives ERB broad authority to fashion a remedy for an unfair labor practice. *See Gresham Tchrs. v Gresham Gr. Sch.*, 52 Or App 881, 892, 630 P2d 1304 (1981). District's failure to disclose the personnel records to the employes was a violation of the collective bargaining agreement and, therefore, was an unfair labor practice. Although our review of ERB's remedy is not identical to our review of an arbitrator's award, if the collective bargaining agreement, as here, does not provide for a grievance procedure ending in binding arbitration, ERB is authorized to find the facts and construe the agreement just as an arbitrator would be. *OSEA v. Pendleton School Dist. 16R*, 85 Or App 309, 311, 736 P2d 204 (1987).

We can set ERB's remedy aside only if it has exercised its authority in a manner that does not reasonably effectuate the purposes of PECBA. ERB did not err when it determined that reinstatement is necessary to carry out and enforce the collective bargaining agreement and to give the parties the "benefit of their bargain" and thereby "to effectuate the purposes" of PECBA.

District contends, however, that ERB's remedy gives the employes *more* than they bargained for, because the collective bargaining agreement did not contain a "just cause" provision and they could have been discharged for any or no reason under that contract. It argues that ERB's conclusion that reinstatement and back pay is the appropriate remedy is wrong if, as it asserts, merely the *possibility* exists that the employes' response to timely disclosure of the personnel records could have saved their jobs. Rather, it asserts that reinstatement and back pay are the appropriate remedy only if the employes would not have lost their jobs *but for* the fact that District violated the contract.

■ District's argument, again, is unconvincing. Reinstatement is an appropriate remedy for non-disciplinary contract violations, because it is the only way to put the parties in the positions in which they were before the contract violation.

In *N. Clackamas Sch. Dist. v. N. Clackamas Educ. Assn,* 54 Or App 211, 225, 634 P2d 1348 (1981), we upheld ERB's enforcement of an arbitrator's award which ordered the district to reinstate a teacher for a fourth probationary year in order to remedy a violation of contractual teacher evaluation procedures even though the contract only provided for three probationary years. We reasoned:

> "[Teacher] is entitled to a remedy, but only so much of a remedy as will restore her to the position she would have occupied had the District followed proper procedures. Had those procedures been followed, [teacher] may or may not have become tenured. Restoring her to a fourth probationary year puts both parties in the position they occupied when matters when [sic] awry, without doing violence to the District's ultimate duty to decide renewal questions." 54 Or App at 225.

Here, ERB attempted to put the employes in the positions which they had occupied before the contract violation. It is not material that District could have terminated them without cause under the contract. The terminations *were* "for cause," and that "cause" was directly related to the undisclosed personnel records. ERB could determine that reinstatement was necessary to give the employes and OSEA the benefit of their bargain, so long as there is substantial evidence that timely knowledge of the undisclosed files "could have had a significant effect on both their conduct and the District's decision to terminate them."

District, however, asserts that substantial evidence does not support ERB's finding, because ERB could only "speculate" about what might have been. It argues that, because the contract contains no "just cause" clause, it is unlikely that any response would have prevented the employes' termination. It also argues that, because the employes did not seek pre-termination hearings and there is no evidence that the records were actually "used" in the termination process, the violation could not have had any effect on District's decision to terminate them. Finally, it argues that the employes knew the essence of the charges against them and that there was no basis to conclude that the two would have changed their behavior.

We disagree. There is substantial evidence to support

ERB's finding that the employes "were not otherwise given the notice and warning that would have been provided had the records been presented to them as required by the contract." From that factual finding, ERB could reasonably conclude that the employes lost a contractually bargained for opportunity to know of the documents and respond to them and, thereby, save their jobs. There is substantial evidence, therefore, to support ERB's finding that knowledge of the undisclosed files "could have had a significant effect on [the employes'] conduct and the District's decision to terminate them."

■ Furthermore, the decision of the employes not to request pre-termination hearings does not change the result here. The purpose of a hearing is to allow an employe an opportunity to present her side of the story and rebut any reasons that District gives for the discharge. Although OSEA and the employes' requested all relevant written documents in order to answer the allegations contained in the termination notices, District continued to withhold the personnel records. Lack of knowledge of the records may have affected the employes' decision not to request a hearing.

Affirmed.