Argued and submitted November 27, 1989, resubmitted In Banc May 9, affirmed
June 13, reconsideration denied August 8, petition for review allowed
September 18, 1990 (310 Or 393)

James ELVIN,
Joyce E. Bedient, Gary F. Burnett,
Jack Fulton, David M. Garrick, Roland Giesbrecht,
Harold W. Jacobs, Warren C. Johnson, Jr., Loren P.
Link, Dennis D. Mattison, Doug Sanford, Gregg L.
Spooner, Thomas W. Tesch, Kenneth N. Twidwell,
Albert S. Wenzel, James E. Yost, and Paul Berg,
*Respondents,*

*v.*

OREGON PUBLIC EMPLOYEES UNION,
*Petitioner.*

(UP 38-87; CA A50465)

793 P2d 338

James S. Coon, Portland, argued the cause for petitioner. With him on the briefs was Imperati, Barnett, Sherwood & Coon, P.C., Portland.

Milton L. Chappell, Springfield, Virginia, argued the cause for respondents. On the brief were Gary V. Abbott, Hallmark, Keating & Abbott P.C., Portland, John C. Scully and National Right To Work Legal Defense Foundation, Inc., Springfield, Virginia.

Monica A. Smith and Durham, Drummonds, Smith & Wiser, Portland, filed a brief *amicus curiae* for Oregon Education Association.

EDMONDS, J.

Graber, J. pro tempore, dissenting.

**EDMONDS, J.**

Oregon Public Employees Union (OPEU) seeks review of an order of the Employment Relations Board (ERB). After finding that OPEU had committed unfair labor practices, ERB ordered OPEU to reimburse the "fair share" payments that respondents had made. OPEU argues that ERB's order is a penalty rather than a remedy, is not necessary to effectuate the purposes of the Public Employees Collective Bargaining Act (PECBA) and, therefore, is beyond the authority of ERB granted to it by ORS 243.676(2)(c).[1] We disagree and affirm.

Respondents are employees of a bargaining unit that OPEU represents, but are not OPEU members. In their unfair labor practices complaint, respondents charged that OPEU did not follow the procedural safeguards required by the Supreme Court in *Chicago Teachers Union v. Hudson*, 475 US 292, 106 S Ct 1066, 89 L Ed 2d 232 (1986), for unions that collect mandatory payments from nonmembers. ERB found that OPEU failed to comply with two of the requirements, relating to an audit of OPEU's expense report and to the placement of disputed funds in escrow, when it determined the amount of respondents' fair share payments. *See* ORS 243.650(10). As a result, ERB concluded:

> "OPEU violated ORS 243.672(2)(a) and (c) by collecting fair share payments without providing all the procedural safeguards prescribed in *Hudson*.
>
> "* * * * *
>
> "The Complainants were 'harmed' by OPEU's violations in that the OPEU procedure for collecting fair share [*sic*] did

---

[1] ORS 243.676(2) provides, in relevant part:

"Where, as a result of the hearing required pursuant to paragraph (c) of subsection (1) of this section, the board finds that any person named in the complaint has engaged in or is engaging in any unfair labor practice charged in the complaint, the board shall:

"(a) State its findings of fact;

"(b) Issue and cause to be served on such person an order that the person cease and desist from the unfair labor practice;

"(c) *Take such affirmative action,* including but not limited to the reinstatement of employees with or without back pay, *as necessary to effectuate the purposes of* ORS 240.060, 240.065, 240.080, 240.123, 243.650 to 243.782, 292.055, 341.290, 662.705, 662.715 and 662.785[.]" (Emphasis supplied.)

not afford them all the procedural protections prescribed by *Hudson.*"[2]

After finding OPEU guilty of unfair labor practices, ERB discussed the appropriate remedy:

"OPEU's escrow violation (limited escrow not based on an independent verification) gave the union full use of certain funds (difference between the limited escrow amount and a 100 percent escrow of objectors' fees) for a brief period of time (from time of objection until the arbitrator's decision). The financial effect of this violation on the Complainants was nil, however; because the fair share amount deducted from their paychecks would have been the same (under a 100 percent escrow) as the amount actually deducted.

"OPEU's notice violation (failure to use verified figures or provided an explanation of chargeable payments to affiliates) likewise did not have a financial impact on the Complainants because they, in fact, did object to any payments for non-chargeable activities in response to the defective notice.

"*A typical monetary 'make-whole' remedy in this case, consequently, would provide no remedy at all to the Complainants. A cease and desist order alone, however, would not effectuate the purposes of PECBA in that OPEU would suffer no loss due to its unlawful conduct because it already has collected all fees possible under the fair share agreement at issue, which expired June 30, 1987.*

"* * * * *

"Complainants charged, and proved, that the OPEU procedure for the collection of fair share funds did not conform with the *Hudson* procedural requirements. Because any fair share assessment against Complainants should have conformed with *Hudson,* and because of the constitutional nature of the rights violated at that point, we will order OPEU to refund, with nine (9) percent per annum interest, all payments

---

[2] OPEU collected fees for the fiscal year of 1985-1986 from non-union employees. When the claim was made in 1987 by respondents that OPEU had collected more than fair share payments, OPEU unilaterally set up a hearing that would permit respondents to challenge the amount of the fee. Respondents objected to the hearing, in part because the notice of chargeable expenditures sent out by OPEU was not verified by an independent audit, contrary to the requirements of *Hudson.* ERB would later find that deficiency to be an unfair labor practice. OPEU rejected respondents' objection and held the hearing without them, characterizing the hearing as an arbitration proceeding. OPEU unilaterally chose the American Arbitration Association to appoint a hearings officer, who then made a determination as to respondents' fair share obligation.

in-lieu-of-dues made to it by the Complainants after October 26, 1986, pursuant to the fair share agreement in the 1985-87 collective bargaining contract between OPEU and the State of Oregon." (Footnotes omitted; emphasis supplied.)

■  OPEU does not dispute ERB's conclusion that it was guilty of unfair labor practices. It assigns as error that portion of the order that requires it to repay respondents the full amount of their fair share payments. It contends that ERB did not merely provide a remedy for respondents' loss, but, in substance, imposed a civil penalty without the findings required by ORS 243.676(4)(a).[3] The heart of OPEU's argument is that ERB exceeded its authority when it ordered return of the fair share payments despite the fact that the amount of the payment was the equivalent of respondents' fair share.

Respondents argue:

"Charging parties never agreed that the OPEU's computations and agency fees were the correct amount, or fair. Charging parties limited the unfair labor practice to a challenge to the procedures rather than also the amount of the fee, on the well-founded belief that if the OPEU's procedures were unconstitutional, the union would not be entitled to collect anything."

They assert that ERB did not impose a civil penalty, but simply fashioned a remedy to return fair share payments to respondents that OPEU had no right to retain, because the union's collection of the fees was a violation of the First Amendment.

■■  ERB did not purport to order a penalty under ORS 243.676(4). However, that statute does not prevent ERB from exercising other remedies or imposing sanctions to achieve the

---

[3] ORS 243.676(4) provides, in relevant part:

"(4) The board may award a civil penalty to any person as a result of an unfair labor practice complaint hearing, in the aggregate amount of up to $1,000 per case, without regard to attorney fees, if:

"(a) The complaint has been affirmed pursuant to subsection (2) of this section and the board finds that the person who has committed, or who is engaging, in an unfair labor practice has done so repetitively, knowing that the action taken was an unfair labor practice and took the action disregarding this knowledge, or that the action constituting the unfair labor practice was egregious[.]"

purpose of PECBA. *See* ORS 243.766(3);[4] ORS 243.672(2)(c). Our function is to construe ORS 243.676(2) so as to carry out the legislature's intent. *See* ORS 174.010; ORS 174.020; *Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 596, 581 P2d 50 (1978). An agency's interpretation of a general enabling statute is entitled to deference. *See Springfield Education Assn. v. School Dist.,* 290 Or 217, 228-30, 621 P2d 547 (1980). When the legislature authorized ERB to "[t]ake such affirmative action * * * as necessary to effectuate the purposes of" PECBA, it must have contemplated that ERB have the authority to deter violations of PECBA and to promote protection of the constitutional rights of those who choose not to participate in a union. ERB's order in this case is consistent with such a broad grant of authority. As respondents point out, ERB simply returned to them that which OPEU could not constitutionally collect. ERB acted within the authority granted to it by the legislature when it sought to deter OPEU or any other union from violating the provisions of PECBA or from not complying with the procedural safeguards of *Hudson.*[5]

Affirmed.[6]

**GRABER, J.** pro tempore, dissenting.

The majority elevates form over substance in holding that the Employment Relations Board (ERB) did not exact a penalty in this case. I would modify the order by deleting paragraph 2 and, accordingly, dissent.

As the majority notes, ERB found that Oregon Public Employees Union (OPEU) violated ORS 243.672(a) and (c),

---

[4] ORS 243.766(3) provides:

"The board shall:

"* * * * *

"Conduct proceedings on complaints of unfair labor practices by employers, employees and labor organizations and *take such actions* with respect thereto *as it deems necessary and proper.*" (Emphasis supplied.)

[5] Other jurisdictions which have considered similar issues have not reached uniform decisions. *See Tierney v. City of Toledo,* 824 F2d 1497 (6th Cir 1987); *Gibney v. Toledo Bd. of Educ.,* 40 Ohio St 3d 152, 532 NE 2d 1300 (1988); *Lowary v. Lexington Local Bd. of Educ.,* 854 F2d 131 (6th Cir 1988); *Gilpin v. AFSCME, AFL-CIO,* 875 F2d 1310 (7th Cir 1989). There is no language in any of these cases that would suggest that ERB acted beyond its statutory authority.

[6] OPEU's other assignment of error does not warrant discussion.

because it did not follow all of the procedural safeguards that the Supreme Court prescribed in *Chicago Teachers Union v. Hudson,* 475 US 292, 106 S Ct 1066, 89 L Ed 2d 232 (1986). The Supreme Court devised those procedures to protect the fair share payers' First Amendment rights. The requirements of ORS 243.672(2)(a) and (c) must be interpreted consistently with the requirements of the First Amendment.

ERB also found, however, that respondents suffered no financial harm as a result of OPEU's violations and that "OPEU attempted to comply with the newly-announced *Hudson* requirements." Respondents asserted that they did suffer financial harm, because OPEU had the use of their fair share payments before having provided the proper procedure for collecting them. ERB replied to that contention by expressly finding that the violations had no financial impact on respondents. None of the parties assigns error to that finding. Respondents also argue that the hearing that resulted in ERB's finding of no financial impact was procedurally improper. ERB ruled against them on that issue, but they did not petition for review. Accordingly, that procedural question is not before us. Because neither the finding of no monetary loss nor the process that led to it is assigned as error, we are bound by that finding.

The majority simply ignores the finding of no financial harm and the implications that flow from it. OPEU contends that ERB did not merely provide a remedy for respondents' loss but, in substance, imposed a civil penalty without the findings required by ORS 243.676(4)(a). A penalty is limited to $1,000 per case and requires ERB to follow procedures that it did not. ORS 243.676(4). The core of OPEU's argument is that ERB ordered restitution even though there is no loss to restore. In my view, ERB's action exceeded its authority under ORS 243.676(2).

After ERB finds that a person has engaged in an unfair labor practice, it shall:

> "Take such affirmative action, including but not limited to the reinstatement of employees with or without back pay, as necessary to effectuate the purposes of ORS * * * 243.650 to 243.782." ORS 243.676(2c).

"We can set ERB's remedy aside only if it has exercised its authority in a manner that does not reasonably effectuate the

purposes of PECBA." *OSEA v. Lake County School District,* 93 Or App 481, 486, 763 P2d 160 (1988); *see also Gresham Tchrs. v. Gresham Gr. Sch.,* 52 Or App 881, 893-95, 630 P2d 1304 (1981). Nevertheless, ERB must act within the bounds of those purposes, which are to provide a remedy for the unfair labor practice. ERB may not act under ORS 243.676(2)(c) to punish a wrongdoer. Its only authority to take punitive action is under the provisions of ORS 243.676(4), which ERB specifically did not invoke in this case.

Because ERB found that OPEU's unfair labor practices had no financial impact on respondents, a money award could not be remedial. The only purpose of the order is to penalize OPEU, as indicated by ERB's reasoning that OPEU would otherwise "suffer no loss due to its unlawful conduct." The majority underscores the punitive purpose of the award when it writes that the order is meant to deter statutory violations. 102 Or App 164. ERB's punitive purpose, and the lack of any financial harm to make whole, makes the order a penalty. *See Bowles v. Barde Steel Co.,* 177 Or 421, 428, 164 P2d 692 (1945). Therefore, ERB's order that OPEU refund the fair share fees exceeded its authority under ORS 243.676(2)(c).

The majority also relies on ORS 243.766(3). 102 Or App 164. That statute directs ERB to "[c]onduct proceedings on complaints of unfair labor practices by employers, employees and labor organizations and take such actions with respect thereto as it deems necessary and proper." The grant of authority is general. It does not override the more specific provisions of ORS 243.676(2), which governs in detail what ERB may do when it finds that a party has committed an unfair labor practice. To the extent that the general statute, ORS 243.766(3), would permit what the more specific statute, ORS 243.676(2), does not, the specific one controls and limits ERB's authority. *See State v. Dick,* 91 Or App 294, 298, 754 P2d 628, *rev den* 306 Or 528 (1988).

Having determined that ERB's order exceeded its statutory authority, I would next consider whether the order was constitutionally required nonetheless. ERB relied on *Tupper v. Fairview Hospital,* 276 Or 657, 556 P2d 1340 (1976), to support its order. In that case, the hospital had terminated Tupper's employment. The Supreme Court concluded that

Tupper had not received the procedural safeguards to which he was entitled before the dismissal. 276 Or at 665. In discussing the proper remedy, the court said:

"Because his dismissal was invalid, we conclude that Tupper is entitled to an award of back wages and other benefits and that he should continue to receive these amounts until he has been properly terminated.[5]

---

"[5] The Court of Appeals seems to have concluded that PERB lacked the necessary authority to order an award of back wages upon a finding that the termination was procedurally invalid. Although there is apparently nothing in the authorizing statute which gives PERB the authority to issue such an order on its own, *see* ORS 240.560, *the constitutional nature of the deprivation involved is enough to require this court to direct that such an award be made.*" 276 Or at 665. (Emphasis ERB's.)

The court held only that the agency had authority to provide a remedy to make the plaintiff whole for what he had actually lost as a result of the unconstitutional action. It did not authorize an award that had no remedial purpose.

Courts that have addressed whether to order a refund of fees collected in violation of the requirements express in *Chicago Teacher Union v. Hudson, supra,* have reached different results. In *Gilpin v. AFSCME, AFL-CIO,* 875 F2d 1310 (7th Cir 1989), an arbitrator found that the union had undercharged the plaintiffs for 1985 and ordered the union to refund the amount of a slight overcharge for 1986. 875 F2d at 1313-14. The court concluded that restitution of all of the fees collected for that period would have been improper, because the union had placed the excess in escrow, and thus had derived no benefit from the money, and because the "fees did not exceed the union's bone fide expenses on behalf of the plaintiffs and the other nonunion employees." 875 F2d at 1314. It held that the plaintiffs were seeking, not restitution, but punitive damages, and that they had not satisfied the standards for such an award. 875 F2d at 1315-16. ERB's order in this case is similar to what the plaintiffs sought in *Gilpin.* I agree with the Seventh Circuit Court of Appeals that the First Amendment

does not require a "restitution" order that ERB's own opinion shows is a penalty rather than a remedy.[1]

ERB had the option to proceed under the civil penalty statute if it believed that a remedial order was insufficient to punish OPEU and to deter others. It did not select that option, and we should hold it to its choice.

I dissent.

Warren, J., joins in this dissent.

---

[1] I do not find the reasoning of post-*Hudson* decisions in which courts have approved a full refund of fees persuasive. *See e.g., Lowary v. Lexington Local Bd. of Educ.,* 854 F2d 131, 134-35 (6th Cir 1988); *Gibney v. Toledo Bd. of Edn.,* 40 Ohio St 3d 152, 157-58, 532 NE2d 1300 (1988). In *Gillespie v. Willard City Bd. of Educ.,* 700 F Supp 898, 902 (ND Ohio 1987), the court ordered all fees returned, but it noted that, once a constitutional procedure for the collection of the proper amount of dues was established, "defendants will be entitled to the amount of 1986-197 dues which would have been paid to support collective bargaining and contract administration." The effect of its decision, thus, was that the union would ultimately receive the payments to which it was entitled under *Hudson.*