Argued and submitted May 6, 1994, reversed and remanded January 18, petition for
review allowed April 18, 1995 (321 Or 47)
See later issue Oregon Reports

# FEDERATION OF OREGON PAROLE AND PROBATION OFFICERS,
*Petitioner,*

*v.*

# STATE OF OREGON, DEPARTMENT OF CORRECTIONS
and County of Multnomah,
*Respondents.*

## (UP-51-91; CA A81631)

888 P2d 597

Daryl S. Garrettson argued the cause for petitioner. With him on the brief was Hoag, Vick, Tarantino & Garrettson.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondent State of Oregon. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

No appearance for respondent Multnomah County.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

RIGGS, J.

Haselton, J., concurring.

**RIGGS, J.**

The Federation of Oregon Parole and Probation Officers (FOPPO) seeks review of an Employment Relations Board (ERB) order. The order determines that the state did not commit an unfair labor practice by refusing to bargain with FOPPO regarding the impacts of an intergovernmental agreement to transfer certain corrections officers from state employment to employment by Multnomah County. We reverse and remand.

This is the second time this case has been before us. In *Federation of Oregon Parole v. Dept. of Corrections*, 119 Or App 355, 357-58, 850 P2d 1154 (1993) (*FOPPO I*), we described the operative facts:

> "Before 1991, Multnomah County provided only misdemeanant parole and probation supervision; felony parole and probation supervision was provided by the state. Accordingly, the parole and probation officers who supervised felons in Multnomah County were state employees. They were represented by FOPPO.

> "In 1991, Multnomah County decided to exercise its discretion under ORS 423.550 to provide parole and probation services for felons. The state and county were required by ORS 423.550(1) to negotiate an intergovernmental agreement so that the parole and probation officers supervising felons could go to work for the county. FOPPO demanded to bargain over both the decision to transfer and the decision's impact. The state refused the demand and formalized the intergovernmental agreement without FOPPO's input.

> "The state parole and probation officers who supervised felons became county employees. County parole and probation officers have a lower salary level than their state counterparts. Although the former FOPPO members did not receive a pay cut their pay was 'red-lined,' which means that their merit raises were postponed until the pay of similarly situated county employees caught up. Other changes in their conditions included different insurance benefits, one less holiday and less access to firearms. They were placed in an existing bargaining unit represented by the American Federation of State, County and Municipal Employees (AFSCME).

> "FOPPO filed an unfair labor practice complaint with ERB, charging that the state and county had improperly refused FOPPO's demand to bargain over the decision and

impact of the intergovernmental agreement. ORS 243.672-(1)(e); ORS 423.550. The Board ruled that the state could refuse to bargain with FOPPO because the state was required to approve the intergovernmental agreement if that agreement conformed to the statutory requirements. The Board also ruled that the county could not bargain with FOPPO before or after the transfer, because FOPPO was never the exclusive representative of the county officers." (Footnote omitted.)

On review of that order, we concluded that, because ORS 423.550 gives the state no real discretion to resist a county's bid to transfer functions, the state had no duty to bargain over the transfer decision itself. We held, however, that ERB's order did not adequately explain its reasons for dismissing FOPPO's complaint with respect to its demand to bargain over the *impact* or *effects* of the transfer:

"ERB's conclusion regarding impacts does not logically follow either as a consequence of the state's right to refuse to bargain over the transfer decision or otherwise. The state, through collective bargaining, could have softened some of the predictable negative effects of the impending transfer when FOPPO demanded bargaining. If FOPPO had negotiated a higher salary with the state in anticipation of the transfer, ORS 423.550(2)(c) would have required the county to pay that salary after the transfer. That would have mitigated some of the workers' anticipated losses. Even if the parties never reached an agreement, good faith bargaining might tend to lessen labor tensions concerning the proposed transfer." *Federation of Oregon Parole v. Dept. of Corrections, supra,* 119 Or App at 360.

We remanded the order to ERB for reconsideration of the impact bargaining issue.

■ In its order after remand, ERB reasserted its original conclusion, that the state's refusal to bargain with FOPPO was not an unfair labor practice under ORS 243.672(1)(e), and attempted to explain its reasoning more fully. In making its determination, ERB focused primarily on whether the state made a unilateral change in employment conditions. Under the "unilateral change" doctrine

"[a]n employer may not unilaterally make a change in one of the conditions of employment about which the employer is required to negotiate and bargain in good faith with the

workers or their representative. *See Labor Board v. Katz*, 369 US 736, 82 S Ct 1107, 8 L Ed 2d 230 (1962)." *Salem Police Employees Union v. City of Salem*, 308 Or 383, 393 n 7, 781 P2d 335 (1989).

Such changes constitute a *per se* violation of the statutory duty to bargain in good faith. *Wasco County v. AFSCME*, 46 Or App 859, 861, 613 P2d 1067 (1980).

 Applying the *per se* rule, ERB reasoned that, because the state did not initiate the transfer decision, it did not unilaterally change employment conditions and could not be held liable for refusing to bargain over the impacts arising from that decision. FOPPO takes issue with that conclusion, arguing that even if the decision to transfer was a *fait accompli*, the state had the ability to negotiate a transfer agreement that would mitigate or eliminate the harmful impacts of the transfer on the affected employees. We review ERB's decision for errors of law, ORS 183.482(8)(a), and agree with FOPPO.

 As we held in *FOPPO I*, the state could not reject the county's decision to assume responsibility for felony parole and probation services. *See* ORS 423.550(1). That decision is left solely to the discretion of the county under ORS 423.550(2)(b). However, as required by statute, the state and county entered into an intergovernmental agreement that provided, *inter alia*, that certain employment conditions, such as wages and benefits, would remain constant. Some elements of the intergovernmental agreement were prescribed by statute:

> "Those statutes state that the receiving employer cannot cut the salaries or retirement eligibility of transferred employees, ORS 423.550(2)(c); that transferred employees can retain accrued sick leave and certain vacation leave, ORS 236.610(2); and that transferred employees must receive the same benefits, hours and conditions of employment enjoyed by the county's other employees. ORS 236.620(4)." *Federation of Oregon Parole v. Dept. of Corrections, supra*, 119 Or App at 359.

However, the statutory scheme that protects the rights of transferring employees does not preclude the inclusion of additional terms or conditions in intergovernmental transfer agreements:

"The rights that the statutes *require* to be extended to transferred employees are not necessarily exhaustive of the rights that *can* be conferred on them, if other sources of rights consistent with the statutes exist." *Gish v. Douglas County*, 109 Or App 84, 89, 817 P2d 1341 (1991). (Emphasis in original.)

■ Although the state was ultimately required to accept the intergovernmental agreement, it was not devoid of control over the terms under which its employees would transfer from state to county employment. In the course of negotiations with the county, the state had some influence over the content of the intergovernmental agreement. In fact, the state purported to have a "strong interest" in protecting the interests of its employees, and indicated that it would not approve the transfer plan until the county responded to specific issues. Yet, preparation of that agreement occurred without any input from the employees subject to transfer. Collective bargaining would have alerted the state to its employees' concerns about the effects of the impending transfer.[1] Although FOPPO could not have been a party to the intergovernmental agreement, it was entitled to present to the state its members' needs and concerns.

■ The state acted unilaterally by forging an agreement with the county that outlined the terms of the employee transfer and ultimately affected employment conditions.[2] Application of the unilateral change doctrine to the situation here prevents the state from frustrating its employees' right to bargain and comports with the policy concerns identified in

---

[1] As we described above, the transferred employees' merit increases were postponed, their insurance benefits were changed, they received one less holiday and less access to firearms.

[2] We note that this case does not present, as FOPPO suggests, a typical "subcontracting" situation. The state did not replace FOPPO-represented employees with employees from outside the bargaining unit to perform the same duties. *See Salem Police Employees Union v. City of Salem, supra*, 308 Or at 395-96 (city required to bargain over impact of future implementation of reserve police officer program). Rather, this is a situation in which the state discontinued providing a particular service, and its employees and their duties were transferred to a separate government entity.

This case is also distinct from the facts before us in *Oregon State Police Officers Assn. v. State of Oregon*, 127 Or App 144, 871 P2d 1018 (1994), in which we held that the state was not required to bargain over the potential impact of higher parking rates unilaterally imposed by a third party. In that case, the employer had *no control* over the action that affected its employees' working conditions.

the Public Employees Collective Bargaining Act (PECBA). *See* ORS 243.656. The obligation to undertake collective bargaining does not mean that the parties must come to an agreement or make concessions. ORS 243.650(4). At a minimum, PECBA requires that, on issues subject to bargaining, public employers and employees come together in good faith and acknowledge the legitimate interests of the other. That requirement ensures that employees will be consulted about decisions that will have an impact on them, thus promoting the legitimate and well-recognized goals of promoting peace in the workplace and preserving order in government operations. As ERB acknowledged in its order, "bargaining could have benefitted [FOPPO's] members." Insofar as the substantive issues at stake, that may or may not be true. Nevertheless, it *might* be true, and by refusing to bargain with FOPPO over the impacts of the transfer decision, the state committed an unfair labor practice under ORS 243.672(1)(e).

ORS 243.676(2) authorizes ERB to devise an appropriate remedy in the event a party commits an unfair labor practice. Such remedies include "affirmative action" necessary to effect the purposes of PECBA, ORS 243.676(2)(c), and the designation of representation costs or attorney fees to the prevailing party. ORS 243.676(2)(d), (e). Unlike the concurrence, we do not believe that ERB's authority on remand is limited solely to assessing representation costs and attorney fees against the state. Our only consideration here is whether the state committed an unfair labor practice under ORS 243.672(1)(e). We leave the task of fashioning a remedy to ERB, which has broad authority under ORS 243.676, and decline to preemptively limit that authority on remand.

Reversed and remanded.

**HASELTON, J.,** concurring.

I agree that the state was obliged to bargain impacts of the intergovernmental transfer and that its refusal to do so was an unfair labor practice. However, I do not agree with the majority's implication that, on remand, ERB can somehow order the parties to "come together in good faith and acknowledge the legitimate interests of the other." 132 Or App at 412. Instead, ERB's authority on remand is limited to

assessing representation costs and attorney fees. ORS 243.676(2)(d), (e).

The state no longer employs the transferred officers; Multnomah County does. FOPPO no longer represents those officers; AFSCME does. Thus, the majority would have ERB require a party that no longer employs the affected workers to bargain with a union that no longer represents them. PECBA does not permit, much less compel, such an anomalous result.

ERB cannot restore the pre-transfer *status quo ante* and order the state to bargain with FOPPO from that position. To do so would roll back and invalidate an intergovernmental agreement expressly authorized under ORS 423.550.[1] Nor may ERB order the state to bargain about the transfer's impacts with FOPPO from the parties' *present* positions. This is so for two reasons. First, the state's duty is to bargain with the exclusive representative of the affected employees, ORS 243.672(1)(e), and AFSCME has replaced FOPPO in that role. Second, bargaining would be meaningless; the state has nothing to gain from the affected employees, because they now work for Multnomah County.[2]

In theory, ERB could fashion some remedy pursuant to ORS 243.676(2)(c) that would not require the state and FOPPO to bargain:

"(2) Where * * * the board finds that any person named in the complaint has engaged in or is engaging in any unfair labor practice charged in the complaint, the board shall:

---

[1] ORS 423.550(1) provides, in part:

"When a county pursuant to ORS 423.500 to 423.600 assumes responsibility for any portion of correctional services previously provided by the Department of Corrections, the county and the department shall enter into an intergovernmental agreement that includes an approved local community corrections plan, program descriptions, budget allocation, performance objectives and method of evaluation for each correctional service to be provided by either the county or the department."

ORS 423.550(2)(b) provides, in part:

"In any county having a population of 200,000 persons or more, at the discretion of the county, all state correctional field officers, immediate supervisors of such correctional officers and any supporting clerical personnel whose jobs involve rendering services assumed by the county shall transfer to county employment."

[2] That does not mean that the affected employees have no ability to bargain over transfer related impacts. I am unaware of any limitation on AFSCME's ability to bargain over such impacts with the *county*, which, after all, initiated the transfer.

"* * * * *

"(c) [t]ake such affirmative action, including but not limited to the reinstatement of employees with or without back pay, *as necessary to effectuate the purposes of [PECBA.]*"

However, that grant of authority, although broad, is not unlimited. Any remedy crafted under that provision must "reasonably effectuate the purposes of" PECBA. *OSEA v. Lake County School District*, 93 Or App 481, 486, 763 P2d 160 (1988). Those purposes are, primarily, to obligate public employers and employees to resolve their differences in collective negotiations, and to promote the improvement of labor relations within the public sector by providing a uniform basis for recognizing public employees' rights to join and be represented by labor organizations. ORS 243.656(5).

In this case, I am unable to conceive of any ERB order that would reasonably effectuate the purposes of PECBA and at the same time provide substantive relief to FOPPO. Although in the past we have approved "make whole" and restitution remedies crafted by ERB as effectuating those purposes,[3] that option is not available to ERB in this case because it is impossible to determine whether the affected employees suffered any restitutory loss, much less the extent of any such loss.

FOPPO can, of course, identify precise differences between the salaries and benefits the affected group received as state employees and the salaries and benefits they now receive as county employees. However, there is no way to tell whether, or to what extent, the state would have acceded to FOPPO's demands to adjust salaries and benefits to mitigate those differences if the parties had engaged in contemporaneous impact bargaining. Under those circumstances, a restitutory remedy would be impermissibly speculative and would effectively impose contract terms in violation of ORS

---

[3] *See, e.g., Elvin v. OPEU*, 102 Or App 159, 793 P2d 338 (1990), *aff'd* 313 Or 165, 832 P2d 36 (1992) (ordering union to return fair share payments collected under procedure that violated federal law); *OSEA v. Lake County School District*, 93 Or App 481, 763 P2d 160 (1988) (ordering employer to reinstate unfairly discharged employees); *Gresham Tchrs. v. Gresham Gr. Sch.*, 52 Or App 881, 630 P2d 1304 (1981) (ordering employer to pay back wages).

243.650(4).[4] *Accord Gresham Tchrs. v. Gresham Gr. Sch., supra* n 3, 52 Or App at 894-95 n 19.[5]

Nonetheless, the case is not moot. Our decision that the state committed an unfair labor practice has "a practical effect on * * * the rights of the parties" in that ERB can assess representation costs and attorney fees against the state pursuant to ORS 243.676(2)(d), (e).[6] *See Brumnett v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993); *Federation of Oregon Parole v. Dept. of Corrections*, 119 Or App 355, 358, 850 P2d 1154 (1993). ERB's writ on remand should run no further.

---

[4] ORS 243.650(4) provides:

" 'Collective bargaining' means the performance of the mutual obligation of a public employer and the representative of its employees to meet at reasonable times and confer in good faith with respect to employment relations, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party. *However, this obligation does not compel either party to agree to a proposal or require the making of a concession.*" (Emphasis supplied.)

[5] At oral argument, FOPPO's counsel forthrightly acknowledged that, in these unusual circumstances, "the remedy is somewhat ethereal."

[6] Those subsections of ORS 243.676(2) provide:

"Where * * * the board finds that any person named in the complaint has engaged in or is engaging in an unfair labor practice charged in the complaint, the board shall:

"* * * * *

"(d) Designate the amount and award representation costs, if any, to the prevailing party; and

"(e) Designate the amount and award attorney fees, if any, to the prevailing party on appeal * * *."