Argued and submitted September 6, decision of Court of Appeals reversed; order after remand of ERB affirmed November 2, 1995

## FEDERATION OF OREGON PAROLE AND PROBATION OFFICERS,
*Respondent on Review,*

*v.*

## STATE OF OREGON, DEPARTMENT OF CORRECTIONS,
*Petitioner on Review,*

*and*

## MULTNOMAH COUNTY,
*Respondent.*

(ERB UP-51-91; CA A81631; SC S42133)

905 P2d 838

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him

on the petition were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Daryl S. Garrettson, of Hoag, Garrettson, Goldberg & Fenrich, Portland, argued the cause for respondent on review. With him on the brief was Taylor L. Jacobson.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.**

GRABER, J.

Unis, J., filed a dissenting opinion.

---

** Durham, J., did not participate in this decision.

GRABER, J.

The issue in this case is whether the State of Oregon, acting through the Department of Corrections, (ODOC) committed an unfair labor practice when it declined to bargain with the Federation of Oregon Parole and Probation Officers (FOPPO) over the terms and conditions of the "intergovernmental agreement" that resulted when Multnomah County (county) decided to transfer certain correctional officers from employment with ODOC to employment with the county. The Employment Relations Board (ERB) held that ODOC had not committed an unfair labor practice. The Court of Appeals reversed. *Federation of Oregon Parole v. Dept. of Corrections*, 132 Or App 406, 888 P2d 597 (1995) (*FOPPO II*). For the reasons that follow, we reverse the decision of the Court of Appeals and affirm ERB's order.[1]

This case has been before both ERB and the Court of Appeals twice. *See Federation of Oregon Parole v. Dept. of Corrections*, 119 Or App 355, 357-58, 850 P2d 1154 (1993) (*FOPPO I*) (discussing the facts that gave rise to this case), *reversed in part and remanded for reconsideration, FOPPO II*, 132 Or App at 408-10 (discussing prior proceedings in this case). Neither FOPPO nor ODOC challenges ERB's findings of fact underlying the Court of Appeals' decision in *FOPPO I*; accordingly, we accept those findings of fact for the purposes of our review. *See Meltebeke v. Bureau of Labor and Industries*, 322 Or 132, 134, 903 P2d 351 (1995) (stating principle).

Before 1991, the parole and probation officers who supervised felons in the county were state employees. FOPPO served as their exclusive bargaining representative. *See* ORS 243.666 (providing for ERB's certification of a labor organization as the exclusive bargaining representative of employees of a public employer).

In 1991, the county decided to exercise its discretionary authority under ORS 423.550[2] to provide parole and

---

[1] We emphasize the narrow scope of the issue and of our decision in this case. We do not decide, for example, the nature or extent of the *county's* duty to bargain after the transfer, or the appropriateness of any post-transfer *bargaining unit*, or what legal effect a newly enacted statute may have on a pre-existing contract.

[2] The pertinent portions of ORS 423.550 are contained in the text, below. 322 Or at 221.

probation services for felons. Pursuant to that statute, ODOC and the county were required to "enter into an intergovernmental agreement" regarding the transfer of the officers from state to county employment. ORS 423.550(1). When FOPPO was advised that the county had exercised that option under ORS 423.550, FOPPO demanded that ODOC bargain with FOPPO over the terms and conditions of that "intergovernmental agreement."[3] ODOC refused, on the ground that it had no duty to bargain in the circumstances. Thereafter, ODOC entered into the "intergovernmental agreement" with the county without having bargained with FOPPO.

The affected officers became county employees pursuant to ORS 423.550. The county placed them in an existing bargaining unit of county employees represented by the American Federation of State, County and Municipal Employees (AFSCME).

The county parole and probation officers whose bargaining unit the affected officers joined had a lower salary level than did their state counterparts. Although the affected officers did not suffer a pay cut, consideration of merit increases that they would have been eligible to receive under their old contract with the state was postponed until the pay of similarly situated county employees caught up to the level of the former state officers' pay. As county employees, the affected officers also received different insurance benefits, one less holiday per year, and reduced access to firearms.

---

In 1995, the legislature repealed ORS 423.550, Or Laws 1995, ch 423, § 15, and enacted a new provision in its place, *id.* at § 16. That new provision expressly states that all positions in the state community corrections branch of ODOC shall be transferred to the counties and that "[t]he implementation of this section does not give rise to any bargaining obligation." Those two provisions do not govern the outcome in this case, however, because they do not become effective until January 1, 1997. Or Laws 1995, ch 423, § 32.

[3] FOPPO sent ODOC a "demand letter," asserting that "both the decision and impact of such an agreement are appropriate subjects for bargaining between" ODOC and FOPPO. Accordingly, FOPPO demanded "to bargain with the State of Oregon over the terms and conditions of the intergovernmental agreement * * * as that agreement relates to the terms and conditions of employees in our bargaining unit."

FOPPO filed an unfair labor practice complaint with ERB, claiming (as now pertinent) that ODOC had violated ORS 243.672(1)(e)[4] when it refused FOPPO's demand to bargain over the terms and conditions of the "intergovernmental agreement." ERB ruled that ODOC permissibly refused to bargain with FOPPO, because ODOC was obliged to accept the county's decision to provide parole and probation services for felons and because there was "no statutory authority for [ODOC] to countermand or otherwise resist the County's decision." *Federation of Oregon Parole and Probation Officers v. State of Oregon, Department of Corrections and County of Multnomah*, 13 PECBR 574, 578 (1992).

On judicial review, the Court of Appeals agreed with ERB's conclusion that ODOC was under no obligation to bargain over the transfer decision itself. *FOPPO I*, 119 Or App at 359. That court also held, however, that ERB had not explained adequately its reasons for dismissing FOPPO's complaint with respect to its demand to bargain over the impact of the transfer on the terms and conditions of employment of the transferred employees. *Id.* at 360-61. Accordingly, the Court of Appeals remanded that portion of ERB's order for reconsideration. *Id.* at 361.

On reconsideration, ERB clarified its original explanation and reaffirmed its original conclusion, that ODOC was under no obligation to bargain with FOPPO concerning the impact of the transfer decision. ERB reasoned that, (1) with respect to pre-transfer terms and conditions of employment about which FOPPO sought to bargain, ODOC had fulfilled its duty to bargain by having bargained to a contract that remained in effect at the time of the transfer, and (2) with respect to post-transfer terms and conditions of employment about which FOPPO sought to bargain, ODOC had no authority to act. FOPPO again sought judicial review. This time, the Court of Appeals reversed ERB's order and held that, "by refusing to bargain with FOPPO over the impacts of the transfer decision, [ODOC] committed an unfair labor practice under ORS 243.672(1)(e)." *FOPPO II*, 132 Or App at 412. The Court of Appeals remanded the case to ERB "to fashion a remedy." *Ibid.* ODOC petitioned this court for

---

[4] ORS 243.672(1)(e) is contained in the text, below. 322 Or at 220.

review of the Court of Appeals' decision in *FOPPO II*, and we allowed that petition.

ODOC's duty to bargain with the representative of its employees arises from the Public Employees Collective Bargaining Act, ORS 243.650 to 243.782 (1993) (PECBA). ODOC's duty to transfer correctional officers arises from the Community Corrections Act, ORS 423.500 to 423.560 (1993) (CCA). This case involves the interaction of those two Acts.

The PECBA addresses the relationship between government and its employees. The PECBA gives public employees "the right to * * * participate in * * * collective bargaining with their public employer on matters concerning employment relations." ORS 243.662. Employment relations, by definition, include, but are not limited to, "matters concerning direct or indirect monetary benefits, hours, vacations, sick leave, grievance procedures and other conditions of employment." ORS 243.650(7) (1993).[5] Under that definition, the county's decision to transfer the parole and probation officers who supervised felons was a "matter[] concerning employment relations" between FOPPO and ODOC. Indeed, no party contends otherwise.

The PECBA also delineates what actions constitute unfair labor practices. ORS 243.672(1)(e) provides:

> "It is an unfair labor practice for a public employer or its designated representative to do any of the following:
>
> "* * * * *
>
> "(e)   Refuse to bargain collectively in good faith with the exclusive representative."

■   This court previously has held that "[a]n *employer* may not *unilaterally* make a change in one of the conditions of employment about which the employer is required to negotiate and bargain in good faith with the workers or their representative." *Salem Police Employees Union v. City of Salem*, 308 Or 383, 393 n 7, 781 P2d 335 (1989) (emphasis added). Accordingly, it is an unfair labor practice for a public

---

[5] The legislature has amended the definition of "employment relations" in ORS 243.650(7) (1993). Or Laws 1995, ch 286, § 1. Those amendments became effective on August 1, 1995. *Id.* at § 35. Those amendments do not affect that portion of the definition of "employment relations" discussed here.

employer to make a unilateral change in a condition of employment over which represented public employees have a right to bargain collectively.

■     Against that background, we consider the pertinent provisions of the CCA. The CCA specifically addresses the transfer of correctional officers from ODOC to county employment. ORS 423.550(2)(b) provides in part:

"In any county having a population of 200,000 persons or more, *at the discretion of the county*, all state correctional field officers, immediate supervisors of such correctional officers and any supporting clerical personnel whose jobs involve rendering services assumed by the county *shall transfer to county employment*." (Emphasis added.)

ORS 423.550(1) requires that, when a county assumes responsibility for correctional services previously provided by the state,

*"the county and [ODOC] shall enter into an intergovernmental agreement* that includes an approved local community corrections plan, program descriptions, budget allocation, performance objectives and method of evaluation for each correctional service to be provided by either the county or the department." (Emphasis added.)

When such a transfer occurs, ORS 423.550(2)(c) provides that a transferred employee

"shall not suffer any reduction in salary or retirement eligibility. Any such employee shall be considered a transferred employee and shall be subject to the provisions of ORS 236.610 to 236.650."

ORS 236.610 to 236.650 (1993) are the statutes that concern the rights and obligations of both public employees and public employers when a public employee's "duties of employment have been assumed or acquired by another public employer." ORS 236.610(1) (1993). Those statutes provide, as pertinent, that transferred employees shall receive the same salary that they received prior to transfer and that they shall retain all accrued sick leave, accrued vacation leave up to 80 hours, *id.* at (2), and health benefits, *id.* at (3). Transferred employees also must receive the same benefits, hours, and conditions of employment enjoyed by the county's other employees. ORS 236.620(4) (1993). Transferred employees retain the seniority that they accrued under their

prior employment. *Id.* at (3). Transferred employees also have the option of continuing under the retirement system offered by their pre-transfer employer. *Id.* at (2).[6]

The term "intergovernmental agreement," used in ORS 423.550(1), is something of a misnomer in the context of this case, insofar as it may suggest that ODOC has a choice whether to allow a transfer of its employees to a county or that ODOC has a choice concerning the terms and conditions of employment following such a transfer. In fact, ODOC has no choice with respect to either subject.

ORS 423.550(2)(b) gives the county, not ODOC, the discretion to decide whether correctional officers should be state or county employees. ORS 423.550(2)(b) requires that, if a county decides to exercise such discretion, the affected parole and probation officers "*shall* transfer to county employment." (Emphasis added.) ODOC lacked authority to prevent the transfer of the affected members of FOPPO from state to county employment. That decision lay solely in the hands of the county, and FOPPO does not argue otherwise to this court.

Similarly, ORS 423.550(1) provides that, when a county assumes responsibility for correctional services previously provided by ODOC, "the county and department *shall* enter into an intergovernmental agreement." (Emphasis added.) Accordingly, after the county exercised its discretion to assume control of the officers employed by ODOC, ODOC was required by law to enter into an "intergovernmental agreement" and, again, FOPPO does not argue otherwise to this court. *See Washington Cty. Police Officers v. Washington Cty.*, 321 Or 430, 438-42, 900 P2d 483 (1995) (public employer's compliance with a specific, affirmative legal duty to act, pursuant to an ERB order to the employer, did not violate employer's duty to bargain).

Finally, ORS 423.550(2)(c) sets the terms and conditions of employment that transferred employees are to enjoy

---

[6] The legislature has modified some substantive aspects of ORS 236.610 and 236.620. Or Laws 1995, ch 286, §§ 21 & 22. The legislature also has repealed ORS 236.650. Or Laws 1995, ch 286, § 34. Those changes became effective on June 6, 1995. *Id.* at § 36. They do not affect our analysis in this case, because the transfer occurred before the changes took effect.

after the transfer. Incorporating additional statutes by reference, ORS 423.550(2)(c) establishes specifically the impact of the transfer on the transferred employees. By contrast, ORS 423.550(1), which provides for the "intergovernmental agreement," does *not* list the terms and conditions of employment for transferred employees among the subjects to be covered therein.

In the circumstances, ODOC did not initiate a unilateral change in employment conditions. ODOC lacked authority to determine whether the employees affected by the county's decision would remain state or county employees. That was purely a county decision. It was the county, not ODOC, that acted unilaterally. As ERB explained:

> "[T]he purpose of the *per se* rule is to prevent employers from acting without first bargaining. It is the unilateral action of the employer that gives rise to its liability under ORS 243.672(1)(e). * * *
>
> "* * * * *
>
> "To reiterate, liability for bad faith bargaining under the PECBA attaches when an action is unilateral — that is, done or undertaken by one party — and the actor is the employer against which a complaint is filed. [ODOC] did not initiate, or even actually 'consent' to, the transfer of parole officers from state to county employment. [ODOC] made no 'change' in conditions of employment for parole officers. It therefore cannot be guilty, under the law concerning unilateral changes, of a *per se* refusal to bargain over the 'impacts' of the change in employment status for parole officers." *Federation of Parole and Probation Officers v. State of Oregon, Department of Corrections and County of Multnomah*, 14 PECBR 739, 742-43 (1993) (order after remand).

Additionally, ODOC lacked authority to determine the post-transfer terms and conditions of employment of the affected employees. The legislature specified the immediate post-transfer terms and conditions of their employment, following which only the county, as the new employer, had authority to bargain.

ORS 423.550 governs the impact of a transfer decision on former ODOC employees. ORS 423.550(3) delineates (by reference to ORS 236.610 to 236.650 (1993)) the terms and conditions of employment that the employees shall

receive after they are transferred. And, by contrast, ORS 423.550(1) does *not* list the terms and conditions of employment for transferred employees among the subjects to be covered by the "intergovernmental agreement."

In summary, we agree with ERB that ODOC did not violate a duty to bargain with FOPPO in the circumstances of this case.

The decision of the Court of Appeals is reversed. The order after remand of the Employment Relations Board, dismissing the unfair labor practice complaint, is affirmed.

**UNIS, J.,** dissenting.

For the reasons stated by Judge Riggs in the Court of Appeals' opinion in this case, *Federation of Oregon Parole v. Dept. of Corrections,* 132 Or App 406, 888 P2d 597 (1995) (*FOPPO II*), I would hold that the State of Oregon, acting through the Department of Corrections, did commit an unfair labor practice under ORS 243.672(1)(e).[1]

The state refused to bargain with the Federation of Oregon Parole and Probation Officers (FOPPO) over the impact of a prospective "intergovernmental agreement" on the terms and conditions of employment of correctional officers employed with the Department of Corrections. The state executed the agreement without bargaining.

The majority holds that the state did not violate ORS 243.672(1)(e) for several reasons. First, according to the majority, the transfer statute determines the employment rights of transferred employees and the transfer results from a statutory requirement, not from a genuine "agreement" between the state and Multnomah County. Second, the state did not initiate a unilateral change in employment conditions; Multnomah County initiated the transfer action. Third, the state's agreement with FOPPO relieved the state of any further duty to bargain over its terms while it was in effect.

Those arguments are unconvincing. The transfer statute requires the transferee employer, here Multnomah County, to continue some aspects of the affected employees'

---

[1] The pertinent portions of ORS 243.672(1)(e) are contained in the text of the majority opinion, 322 Or at 220.

pre-transfer employment benefits in several areas, such as salary, sick leave accrual, vacation leave, and health benefits. ORS 236.610(2) and (3) (1993). Nothing in the transfer statute suggests that the transferee employer cannot agree to extend employment benefits beyond the minimum requirements set by the transfer statute. The legislature's establishment of a statutory floor of employment benefits for transferred employees does not negate the right of the employees to bargain for protection against the impact of the transfer that is greater than the statutory floor.

The question of which public entity initiated the transfer action is beside the point. The majority ignores the fact that, under ORS 243.672(1)(e), when a public employer ceases to perform bargaining unit work, the decision to do so *and the impact* of that decision are subject to a separate duty-to-bargain analysis. *See FOPPO v. Corrections Division*, 7 PECBR 5649, 5654-55 (1983) (discussing rule in the context of subcontracting). Even if the *decision* to take that action is not subject to mandatory bargaining, the employer must bargain over the *impacts* of such an action if it affects employment relations. *Id.* As the majority admits, 322 Or at 218, that is the case here. The employees facing the transfer correctly anticipated that the transfer would negatively impact their salary, insurance benefits, and personal safety.

I now apply the separate analysis that the statute requires. The state has an interest in resisting bargaining over the *decision* to transfer its employees and their work to Multnomah County because that decision belongs to the county, not to the state. However, the state has no equivalent interest in refusing to bargain over the *impacts* of the transfer on employees' working conditions. Those impacts were within the state's power to control. Under ORS 423.550(2)(c), which incorporates ORS 236.610 to 236.650, transferred employees are entitled to protection against *any reduction* in their salary, health benefits, and other specified conditions of employment as a result of the transfer. Whether a reduction has occurred, in violation of that statute, is measured by what conditions of employment are in place at the time of the transfer. Thus, the employees could have protected themselves from some or all of the negative impacts of the potential transfer by bargaining with the state for those

protections before the transfer occurred. The Court of Appeals correctly recognized that the state has no excuse for resisting bargaining over those impacts of the transfer on working conditions that were within the state's power to control. Bargaining with the state could alleviate some or all of the employees' concerns over their rights in the prospective transfer, whether or not bargaining would lead to any agreement with the state. Multnomah County's role in initiating the transfer does not alter that fact and does not relieve the state of its duty to bargain.

The majority concludes that "ODOC lacked authority to determine the post-transfer terms and conditions of employment of the affected employees" because "ORS 423.550 governs the impact of a transfer decision on former ODOC employees" and that statute does not require an intergovernmental agreement to set out the terms and conditions of employment for transferred employees. 322 Or at 223. Those statements suffer from a serious lack of analysis. First, we must determine whether the state violated a duty to bargain at the time that it refused to bargain. Here, the refusal occurred *before* the transfer, yet the majority focuses only on the state's inability to influence the conditions of employment of its employees *after* the transfer took place. The majority refuses to determine whether the state violated its bargaining duty at the only relevant time, *i.e., before the transfer*. Second, the absence of a reference to working conditions as an element of an intergovernmental agreement is meaningless in light of the clear terms of ORS 423.550(2)(c) that protect transferred employees from any reduction in specified working conditions as a result of the transfer. In other words, pre-transfer bargaining could protect the transferred employees' working conditions *regardless* of the literal terms of the intergovernmental agreement.

An order to bargain would promote industrial peace in the face of a unilateral transfer to a new bargaining unit. The transfer threatened an imminent reduction in the working conditions of the affected employees; therefore, its impact on employees was a proper subject of mandatory bargaining. Accordingly, I would hold that the Employment Relations Board erred in its determination that the state did not violate ORS 243.672(1)(e). I agree with the Court of Appeals

that the case should be remanded to the Employment Relations Board "to fashion a remedy."

I respectfully dissent.