**Orville E. JAMES and Lola M. James, Plaintiffs-Appellants,**

v.

**CITY OF JENNINGS, Defendant-Respondent.**

No. 51864.

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 11, 1987.

Francis H. Kennedy, St. Louis, for plaintiffs-appellants.

Robert C. Ely, St. Louis, for defendant-respondent.

SMITH, Presiding Judge.

Plaintiffs appeal from an order sustaining defendant's motion for judgment and alternative motion for new trial on one count and from the court's order directing a verdict for defendant on another count. Plaintiffs' cause of action was based upon the denial by the city of an occupancy permit. The count on which a verdict was directed alleged racial discrimination in the refusal to issue the permit. The count submitted to the jury asserted denial of a property right because the denial was arbitrary and capricious. The petition premised recovery on Article I, Secs. 2 and 10 of the Missouri Constitution, Sec. 478.070 RSMo 1969, and 42 U.S.C. § 1983.

Plaintiffs entered into a contract for the purchase of a home in Jennings. The city has an ordinance which establishes occupancy limitations based upon the size of the residence and its individual rooms. The building inspector initially determined that the living room was too small for a family of seven—the number in plaintiffs' family. Upon remeasurement the living room was found to be adequate, but the master bedroom was stated to be too small for three occupants, the number that would be occupying it. In making this determination, the inspector disallowed a seven and one-half square foot space between the entry door and a protruding closet. Most of this space is the pathway traversed by the door when it is opened and closed. Pursuant to the ordinance, an appeal of the denial of the occupancy permit was taken to the city council. A hearing was held by the council as specified in the ordinance and following that hearing the council denied the permit. No further appeal was made by the plaintiffs. They then brought this suit seeking money damages. As previously indicated, the trial court directed a verdict for defendant on the allegations of racial discrimination. A jury awarded each plaintiff $7,000 on the count alleging capricious and arbi-

trary denial of property rights. The trial court sustained defendant's motion for judgment notwithstanding the verdict and alternatively granted defendant a new trial on the basis that the verdict was against the weight of the evidence.[1]

Neither party has raised any question of the jurisdiction of Missouri courts to entertain an action such as plaintiffs assert here. We must, however, examine our jurisdiction *sua sponte.* Plaintiffs premise their suit upon two provisions of the Missouri Constitution. Article I, Sec. 2 deals with promotion of the general welfare, natural rights of persons, equality under the law, and the purpose of government. We perceive that that provision is the main support for plaintiffs' racial discrimination claim. Article I, Sec. 10 is the Missouri due process clause. Plaintiffs' claim for denial of property rights is mainly based on that clause. There is obviously some overlap of the two provisions. We deal first with the latter claim.

■ Our Constitution has a specific provision for the enforcement of due process in administrative proceedings. Art. V, Sec. 18. That procedure is through judicial review. Chapter 536, RSMo 1986, provides an extensive statutory framework for administrative proceedings. Sec. 536.100 through 536.150 authorize judicial review of administrative procedures and decisions. Whether 536.100 or 536.150 is applicable depends upon whether the case is contested or non-contested. Sec. 536.100. A case is contested when a hearing is required by law to determine the rights of the party. Sec. 536.010, *State ex rel. Crouse v. City of Savannah,* 696 S.W.2d 346 (Mo.App. 1985) [1, 2]. As we read the ordinance of Jennings it requires a hearing and in fact one was given here. It makes no real difference however, both Sec. 536.140 (contested cases) and Sec. 536.150 (non-contested cases) require the court to determine whether the action of the administrative body is arbitrary, capricious, or unreasonable. Both sections involve a decision by the court, not by a jury. Failure to follow the statutory provisions for administrative review is jurisdictional. *Lafayette Federal Savings and Loan v. Koontz,* 516 S.W.2d 502 (Mo.App.1974) [1–3].

■ The city council was acting in an administrative capacity when it denied the occupancy permit. *State ex rel. Ludlow v. Guffey,* 306 S.W.2d 552 (Mo. banc 1957) [1–3]. Its action was subject to judicial review and plaintiffs were required to pursue that review to challenge the denial of the occupancy permit. It would be destructive indeed of the entire concept of administrative procedure if disgruntled applicants for licenses, zoning permits, variances, and the multitude of similar governmental approved authorizations could by-pass the judicial review procedures and launch a collateral attack on the administrative decision in a damage suit before a jury. The trial court had no jurisdiction over plaintiffs' claim for damages to their property rights and we also lack jurisdiction.

■ Plaintiffs also invoke 42 U.S.C. § 1983. Such claims are cognizable in Missouri courts. *Stufflebaum v. Panethiere,* 691 S.W.2d 271 (Mo. banc 1985) [2]. Most Federal circuits, with the notable exception of the First, do not require an exhaustion of state remedies before allowing resort to the *federal* courts. See for example, *Littlefield v. City of Afton,* 785 F.2d 596 (8th Cir.1986). *Contra Raskiewicz v. Town of New Boston,* 754 F.2d 38 (1st Cir.1985). But we are not a federal court and are bound by the requirements of our Constitution and law. Where there exists a plain, adequate, and complete remedy for redress of plaintiffs' grievances under our state procedures, we lack the authority to permit a by-pass of that procedure. *Stufflebaum v. Panethiere, supra.* Our administrative procedure act provides such a remedy. Invocation of 42 U.S.C. § 1983 does not change the lack of jurisdiction over plaintiffs' claim for damages for denial of a property right, i.e. the occupancy permit, in an administrative proceeding.

---

1. This may have been, at least in part, based upon plaintiffs' expert witness' testimony on cross-examination that while most inspectors would count the excluded space, some would not.

The racial discrimination claim presents a somewhat different situation. Such an action is not an attempt to collaterally attack the administrative action in the same sense that the denial of a property right is. Such a claim is designed to recompense plaintiffs for a personal loss they have sustained because of improper treatment of them as human beings. It is arguable that recovery is not dependent on showing that the administrative decision was wrong but only that it was arrived at for racially discriminatory reasons. We need not, however, decide the availability of an action such as this in this case. The plaintiffs simply failed to establish that the council's decision was made for racially discriminatory reasons. Plaintiffs do not strongly argue the contrary.

The thrust of their argument on this issue is that the trial court refused to admit evidence that would have supported such a claim. That evidence consisted of a conversation of the mayor with two real estate agents a week after the denial of the permit. The discussion was not concerning the plaintiffs or their permit. In the conversation the mayor indicated his unwillingness to cooperate with the agents as long as they attempted to sell homes to "niggers." The mayor's statement, if made, was reprehensible. The trial court determined the conversation was not relevant to the case. The mayor attended the council meeting but had no vote on the occupancy permit. The building commissioner was administratively responsible to the mayor, but it was not his decision which is under attack. His report to the council set out the disagreement over how the room was to be measured and the council made its determination of which measurement was proper under the ordinance. There was no evidence that the mayor made his prejudices known to the building commissioner or to the council members. The evidence did not indicate a pattern of racial discrimination in the issuance of occupancy permits, or other conduct by the council to preclude blacks from residing in the city. In fact the house plaintiffs sought the occupancy permit for was subsequently acquired and resided in by a black. There was no evidence that any council member shared the mayor's views or was even aware of them. There was similarly no evidence concerning the building commissioner. In the absence of some evidence to connect the mayor's comment a week later to the action taken by the council, the evidence lacked sufficient relevancy to overcome its obvious prejudicial impact. *Gant v. Hanks*, 614 S.W.2d 740 (Mo.App.1981) [3, 4].

Judgment affirmed.

DOWD and REINHARD, JJ., concur.