GIBNEY ET AL., APPELLEES, *v.* TOLEDO BOARD OF EDUCATION ET AL.; TOLEDO FEDERATION OF TEACHERS, APPELLANT.

[Cite as Gibney *v.* Toledo Bd. of Edn. (1988), 40 Ohio St. 3d 152.]

(No. 87-2097—Submitted November 2, 1988—Decided December 29, 1988.)

*National Right to Work Legal Defense Foundation Inc., David T. Bryant* and *R. Timothy Bauer,* for appellees.

*Schnorf & Schnorf, David M. Schnorf* and *Jeffrey A. France,* for appellant.

LOCHER, J. The primary issue presented in this action is whether, subsequent to April 1, 1984, appellees were required to exhaust any administrative remedies provided in R.C. 4117.01 *et seq.* prior to obtaining relief in the court of common pleas under Section 1983, Title 42, U.S. Code. We hold in the negative and, accordingly, affirm the decision of the court of appeals.

In *Abood* v. *Detroit Bd. of Edn.* (1977), 431 U.S. 209, the United States Supreme Court upheld agency shop service fees as being constitutionally valid as long as the agency shop agreement required every employee in the bargaining unit to defray the costs of collective bargaining, contract administration, and grievance adjustment. However, *Abood* also held that a union could not, without violating the First

Amendment, " 'collect from dissenting employees any sums for the support of ideological causes not germane to its duties as collective bargaining agent.' " *Chicago Teachers Union, Local No. 1* v. *Hudson* (1986), 475 U.S. 292, 294, quoting *Ellis* v. *Railway Clerks* (1984), 466 U.S. 435, 447. Plans which provide for refunding portions of service fees to nonmembers pursuant to the requirements of the First Amendment must contain adequate procedures which enable nonmembers to protect their constitutional rights and challenge the validity of the refund. See *Hudson, supra.*

As noted above, appellees challenged the service fee and TFT's procedures regulating the rebate of portions of such service fees. Appellees relied on Section 1983, Title 42, U.S. Code[4] as a basis for their federal constitutional claims and the courts below granted relief pursuant to those claims. "[A] § 1983 action is available to redress substantive due process vio-

lations of a specific constitutional guarantee." *McGlumphy* v. *Fraternal Order of Police* (N.D. Ohio 1986), 633 F. Supp. 1074, 1079. While Section 1983 was designed to provide injured persons access to federal courts, the Congress conferred concurrent jurisdiction on state courts as well. *Patsy* v. *Bd. of Regents of Florida* (1982), 457 U.S. 496, 506-507.

In the instant action, TFT did not appeal the trial court's determination that the procedures used to refund nonmember employee service fees and resolve disputes concerning the validity of the rebates were unconstitutional. That issue is not before us. TFT contends that the trial court erred in granting relief to appellees extending beyond April 1, 1984, because appellees were required to exhaust administrative remedies contained in R.C. 4117.01 *et seq.,* and specifically R.C. 4117.09(C), before obtaining relief pursuant to Section 1983.[5] We do not agree.

---

[4] Section 1983, Title 42, U.S. Code provides in pertinent part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. * * *"

[5] R.C. 4117.09(C) provides in pertinent part:

"The agreement may contain a provision that requires as a condition of employment, on or after a mutually agreed upon probationary period or sixty days following the beginning of employment, whichever is less, or the effective date of a collective bargaining agreement, whichever is later, that the employees in the unit who are not members of the employee organization pay

to the employee organization a fair share fee. The arrangement does not require any employee to become a member of the employee organization, nor shall fair share fees exceed dues paid by members of the employee organization who are in the same bargaining unit. Any public employee organization representing public employees pursuant to Chapter 4117. of the Revised Code shall prescribe an internal procedure to determine a rebate, if any, for nonmembers which conforms to federal law, provided a nonmember makes a timely demand on the employee organization. * * * The deduction of a fair share fee by the public employer from the payroll check of the employee and its payment to the employee organization is automatic and does not require the written authorization of the employee.

"The internal rebate procedure shall provide for a rebate of expenditures in support of partisan politics or ideological causes not germane to the work of employee organizations in the realm of collective bargaining."

In *Patsy* v. *Bd. of Regents of Florida, supra,* the Supreme Court held that plaintiffs need not exhaust state administrative remedies before instituting Section 1983 actions in federal court. State courts were divided as to whether *Patsy* also applied with regard to the filing of Section 1983 actions in state courts. See *Kramer* v. *Horton* (1986), 128 Wis. 2d 404, 383 N.W. 2d 54, certiorari denied (1986), 479 U.S. 918; *McConnell* v. *Seattle* (1986), 44 Wash. App. 316, 722 P. 2d 121; *State, ex rel. Basham,* v. *Medical Licensing Bd. of Ind.* (Ind. App. 1983), 451 N.E. 2d 691; *Bartschi* v. *Chico Community Memorial Hosp.* (1982), 137 Cal. App. 3d 502, 187 Cal. Rptr. 61 (all holding *Patsy* not applicable to state court Section 1983 actions). See, also, *James* v. *Jennings* (Mo. App. 1987), 735 S.W. 2d 188. But, see, *Maryland Natl. Capital Park & Planning Comm.* v. *Crawford* (1984), 59 Md. App. 276, 475 A. 2d 494, affirmed on other grounds (1986), 307 Md. 1, 511 A. 2d 1079; *Fetterman* v. *Univ. of Conn.* (1984), 192 Conn. 539, 473 A. 2d 1176; *Logan* v. *So. Cal. Rapid Transit Dist.* (1982), 136 Cal. App. 3d 116, 185 Cal. Rptr. 878 (all holding *Patsy* applicable to state court Section 1983 actions). See, also, *O'Connors* v. *Helfgott* (R.I. 1984), 481 A. 2d 388.

TFT argues that *Patsy, supra,* only applies to Section 1983 actions filed in federal court. We need not delve into such analysis because of the Supreme Court's recent decision in *Felder* v. *Casey* (1988), 487 U.S. ____, 101 L. Ed. 2d 123, 108 S. Ct. 2302. In *Felder,* the plaintiff had been arrested in Milwaukee, Wisconsin, for disorderly conduct. Following an investigation, the charge was dropped. Subsequently, the plaintiff filed a state court Section 1983 action against Milwaukee and several of its police officers, alleging that his arrest was unprovoked and racially motivated and violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. A Wisconsin statute provided that before a suit could be brought in state court against a state or local government entity or officer, the plaintiff must notify the governmental defendant of the circumstances giving rise to the claim, the amount of the claim and his or her intent to hold the named defendant liable. The statute also required that, in order to afford the defendant an opportunity to consider the requested relief, the claimant must refrain from filing suit for one hundred twenty days after providing such notice. If the plaintiff failed to comply with these requirements, it was grounds for dismissal. The Supreme Court of Wisconsin held that this "notice-of-claim" statute applied to federal civil rights actions brought in state court under Section 1983.

In an opinion utilizing broad and sweeping language, the Supreme Court reversed. The court stated: "Section 1983 creates a species of liability in favor of persons deprived of their federal civil rights by those wielding state authority. As we have repeatedly emphasized, 'the central objective of the Reconstruction-Era civil rights statutes * * * is to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief.' * * * Thus § 1983 provides 'a uniquely federal remedy against incursions * * * upon rights secured by the Constitution and laws of the Nation,' * * * and is to be accorded 'a sweep as broad as its language.' * * *" (Citations omitted.) *Id.* at ____, 101 L. Ed. 2d at 138, 108 S. Ct. at 2307.

The Supreme Court found that the Wisconsin statute undermined this "uniquely federal remedy," on three separate bases. First, because it condi-

tions the right of recovery that Congress has authorized for a reason inconsistent with the purpose of the federal statute. Second, because the notice provision discriminates against the federal right. Finally, and most importantly for our purposes, the court viewed the Wisconsin policy as imposing an exhaustion of remedies requirement on persons who choose to assert their federal right in state court. *Id.* at \_\_\_\_, 101 L. Ed. 2d at 142-143, 108 S. Ct. at 2310-2311.

TFT maintains that "[t]he holding in *Felder* is limited to the Wisconsin notice-of-claim statute examined in that case." Our interpretation of that decision is to the contrary. A thorough reading of *Felder* indicates that it reaches well beyond the use of notice-of-claim requirements. In treating the Wisconsin statute as an exhaustion requirement, the court cites *Patsy, supra:*

"* * * In *Patsy* v. *Board of Regents of Florida* * * *, we held that plaintiffs need not exhaust state administrative remedies before instituting § 1983 suits in federal court. The Wisconsin Supreme Court, however, deemed that decision inapplicable to this state-court suit on the theory that States retain the authority to prescribe the rules and procedures governing suits in their courts. * * * As we have just explained, however, that authority does not extend so far as to permit States to place conditions on the vindication of a federal right. * * * Given the evil at which the federal civil rights legislation was aimed, there is simply no reason to suppose that Congress meant 'to provide these individuals immediate access to the federal courts notwithstanding any provision of state law to the contrary,' * * * yet contemplated that those who sought to vindicate their federal rights in state courts could be required to seek redress in the first instance from the very state officials whose hostility to those rights precipitated their injuries." *Id.* at \_\_\_\_, 101 L. Ed. 2d at 143-144, 108 S. Ct. at 2311.

The *Felder* court also clearly expressed its view as to where civil rights actions should be resolved. In response to the respondents' argument that the exhaustion requirement was "essentially *de minimis* because the statutory settlement period entails none of the additional expense or undue delay typically associated with administrative remedies" (*id.* at \_\_\_\_, 101 L. Ed. 2d at 144, 108 S. Ct. at 2311), the court held: "This argument fails for two reasons. First, it ignores our prior assessment of the dominant characteristic of civil rights actions: *they belong in court. Burnett* [v. *Gratton* (1984)], 468 U.S., at 50, * * * (emphasis added). 'These causes of action,' we have explained, 'exist independent of any other legal or administrative relief that may be available as a matter of federal or state law. They are judicially enforceable *in the first instance.' Ibid.* (Emphasis added). *The dominant characteristic of a § 1983 action, of course, does not vary depending upon whether it is litigated in state or federal court* * * *." (Emphasis added.) *Id.* at \_\_\_\_, 101 L. Ed. 2d at 144, 108 S. Ct. at 2311-2312.

Based on the foregoing, it is our view that the Supreme Court has rejected the use of exhaustion requirements in state-court Section 1983 actions unless Congress has provided otherwise. Furthermore, by imposing an exhaustion requirement on those filing Section 1983 actions in our state courts, such as plaintiffs in the case at bar, we would be forcing such civil rights victims to comply with a requirement that is entirely absent from civil rights litigation of this sort in federal courts. *Felder* clearly objected to such

a practice. *Id.* at ____, 101 L. Ed. 2d at 139, 108 S. Ct. at 2308.

We therefore decline to accept the invitation of TFT to fashion an exhaustion-of-administrative-remedies requirement in the cause *sub judice* and hereby hold that exhaustion of state administrative remedies is not required prior to obtaining relief pursuant to Section 1983 in state court. Accordingly, we find that the trial court did not err in granting relief to appellees extending beyond April 1, 1984.

We now turn to TFT's contention that the relief granted to the appellees by the trial court was erroneous. Following the trial court's determination that the procedures used by TFT to refund service fees and resolve rebate disputes were unconstitutional, TFT was enjoined from collecting service fees from appellees and the funds placed in escrow were ordered released to appellees with interest. We look to recent federal case law in this area as being most persuasive in reaching our determination as to whether the relief granted was proper. In *Tierney* v. *Toledo* (C.A. 6, 1987), 824 F. 2d 1497, the court found that the rebate procedures set forth in the agency shop plan involved in that case were constitutionally deficient under *Hudson, supra.*[6] *Id.* at 1505. As a result, the court determined "* * * that no union or employer may take any action to enforce a non-union member's duty to pay any dues, whether through a deduction from wages or payment from wages already

paid, until a plan with procedures meeting the commands of *Abood* and *Hudson* is established and operating." *Id.* at 1504. The court then enjoined the union from enforcing collection of service fees until a constitutionally adequate plan was functioning. *Id.* at 1507.

The Sixth Circuit then reiterated its holding in *Tierney* in *Lowary* v. *Lexington Local Bd. of Edn.* (C.A. 6, 1988), 854 F. 2d 131. In *Lowary,* the district court allowed the fees to be collected after the suit was filed as long as the funds were placed in an interest bearing escrow account pending the decision on the merits. On appeal, the Sixth Circuit stated:

"* * * Today, we find that once a non-union member has objected to the current procedures in place for the collection of fair-share fees on the ground that these procedures do not satisfy the constitutional requirements set forth in *Hudson,* and the district court has found it likely that the procedures will be found, on the merits of the case, to violate *Hudson,* it constitutes an abuse of discretion for the court to allow fair-share fees to be collected even if the collected fees are placed in an escrow account. Such a remedy is contrary to the Supreme Court's decision in *Hudson* as later interpreted by this court in *Tierney.*

"Accordingly, we REVERSE the district court's order allowing the fair-share fees to be collected and placed in the escrow account. Likewise, the escrow account is to be disbanded and

---

[6] *Hudson* set forth three constitutional criteria which an agency shop service fee plan must meet. First, the plan must include a " 'procedure which will avoid the risk that * * * [nonmembers'] funds will be used, even temporarily, to finance ideological activities unrelated to collective

bargaining.' " *Id.* at 305. Second, the plan must provide nonmembers with adequate information about the basis for the proportionate share. *Id.* at 306. Third, the procedure must "provide for a reasonably prompt decision by an impartial decision-maker." *Id.* at 307.

the fees previously placed therein remitted to plaintiffs." *Id.* at 134-135.

*Tierney* and *Lowary* both involve Section 1983 actions filed by plaintiffs alleging that procedures provided to them in connection with the collection of their service fees were constitutionally deficient. Both actions support a holding that service fees may not be collected from nonmembers until a plan providing for the constitutionally required procedure set forth in *Hudson, supra,* is in effect. The trial court in the action before us found the plan in question to be constitutionally insufficient with regard to its procedures for refunding service fees and resolving rebate disputes. Thus, the deduction of fees, including those placed in the escrow account pursuant to the court order of October 13, 1983, had infringed upon the appellees' First Amendment rights. Restitution of those fees and injunctive relief prohibiting collection of further fees is a proper remedy. See *Lowary, supra.* We therefore find that the relief granted by the trial court in the case at bar was proper.

Finally, TFT argues that the award of attorney fees to appellees pursuant to Section 1988, Title 42, U.S. Code[7] should be reversed by this court because appellees did not exhaust administrative remedies pursuant to R.C. 4117.01 *et seq.,* prior to obtaining relief under Section 1983. Thus, any award of attorney fees for services performed after April 1, 1984 is improper because it was not reasonably expended on the litigation. As we stated earlier, exhaustion of administrative remedies was not required in this action. Therefore, we reject the argument of TFT on the basis of our earlier discussion.

A plaintiff must be a "prevailing party" to recover attorney fees under Section 1988. If the plaintiffs succeed on any significant issue in litigation which achieves some of the benefit they sought in bringing suit they may be considered "prevailing parties." *Hensley* v. *Eckerhart* (1983), 461 U.S. 424, 433. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation * * *." *Id.* at 435. A trial court has discretion in determining the amount of a fee award under Section 1988. "* * * This is appropriate in view of the * * * [trial] court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id.* at 437.

In the case *sub judice,* there can be no doubt that the appellees were "prevailing parties" entitled to attorney fees.[8] In its judgment entry of June 19,

---

[7] Section 1988, Title 42, U.S. Code provides in pertinent part:

"* * * In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 * * *, or title VI of the Civil Rights Act of 1964 * * *, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

[8] The requisite state action for Section 1983 purposes and, ultimately, Section 1988 purposes, arises from the contractual relationship between TFT and the board based on the collective bargaining agreement. "* * * The color of state law requirement is satisfied when a private entity acts in concert with a public agency to deprive a person of constitutional rights." *McGlumphy* v. *Fraternal Order of Police* (N.D. Ohio 1986), 633 F. Supp. 1074, 1079, fn. 10, citing *Hudson* v. *Chicago Teachers Union Local No. 1* (C.A.7, 1984), 743 F. 2d 1187, 1191.

1986, the trial court provided an adequate explanation of its reasons for the fee award and its amount. No abuse of discretion is evident from the record. Therefore, we affirm the award of attorney fees to appellees by the trial court pursuant to Section 1988, Title 42, U.S. Code.

Based on all the foregoing,[9] we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., HOLMES, WRIGHT and H. BROWN, JJ., concur.

SWEENEY and DOUGLAS, JJ., dissent.

---

[9] In light of our decision that state administrative remedies did not have to be exhausted in this action, we need not address TFT's second proposition of law. Furthermore, any determination by this court as to whether R.C. 4117.09(C) satisfies the third requirement noted in *Hudson, supra,* would be purely advisory.