[Cite as *Kolkowski v. Ashtabula Area Teachers Assn.*, 2022-Ohio-3112.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| BARBARA KOLKOWSKI, | CASE NO. 2021-A-0033 |
| Plaintiff-Appellant, | |
| - v - | Civil Appeal from the<br>Court of Common Pleas |
| ASHTABULA AREA TEACHERS<br>ASSOCIATION, et al., | Trial Court No. 2021 CV 00034 |
| Defendants-Appellees. | |

## O P I N I O N

Decided: September 6, 2022
Judgment: Affirmed

*Robert Alt* and *Jay R. Carson,* The Buckeye Institute, 88 East Broad Street, Suite 1300, Columbus, OH 43215 (For Plaintiff-Appellant).

*Ira J. Mirkin* and *Jeffrey J. Geisinger,* Green, Haines, Sgambati Co., LPA, 100 Federal Plaza East, Suite 800, P.O. Box 849, Youngstown, OH 44501, and *P. Casey Pitts,* Altschuler Berzon, LLP, 177 Post Street, Suite 300, San Francisco, CA 94108 (For Defendants-Appellees, Ashtabula Area Teachers Association and Ohio Education Association).

*David E. Pontius, Jeffrey A. Ford,* and *Jason L. Fairchild,* Andrews & Pontius, LLC, 4810 State Road, P.O. Box 10, Ashtabula, OH 44005 (For Defendant-Appellee, Ashtabula Area City School District).

JOHN J. EKLUND, J.

{¶1}   This matter concerns the application of several important principles and bodies of law. These issues form a five-way intersection that concerns: (1) contract interpretation, (2) Constitutional rights under the First and Fourteenth Amendments, (3) labor relations, (4) the R.C. Chapter 4117 statutory framework for public sector unions,

and (5) questions of jurisdiction and standing. This intersection of legal principles raises important substantive and procedural issues affecting not only the parties' rights, but also Ohio's entire framework for public sector labor relations. We are called on to navigate this intersection of issues being mindful that it is a place where a nasty accident can occur, especially as in this case, where we have five cars arriving at the same time. Fortunately, just as the rules of the road provide guidance in yielding the right of way when multiple cars approach an intersection, Ohio's courts and legislatures have provided a framework for navigating this legal intersection by acknowledging and balancing the interests of those who occupy each lane.

{¶2} Appellant, Barbara Kolkowski, appeals the order of the Ashtabula County Court of Common Pleas, granting the appellees' motions to dismiss her complaint for declaratory relief, injunctive relief, and money damages pursuant to 42 U.S.C. 1983. Appellant claimed that her constitutional rights, and her statutory rights under R.C. 4117.03(A)(5), had been violated when she was not allowed to retain private counsel to represent her in arbitration proceedings. The arbitration arose from a grievance appellant asserted pursuant to the Collective Bargaining Agreement (CBA) between appellees, the Ashtabula Area Teachers Association (Association or Union) and the Ashtabula Area City Schools Board (Board). The Ohio Education Association (OEA) is also a named defendant-appellee in this matter.

{¶3} Appellant raises two assignments of error arguing that the trial court erred in dismissing her case by finding that she did not have a right to retain her own counsel for the arbitration and by finding that there was nothing in the CBA between the

2

Association and the Board that would allow appellant to decline Association assistance or Association counsel at the arbitration level of the grievance process.

{¶4} After review of the record and the applicable caselaw, we find appellant's assignments of error to be without merit. The State Employment Relations Board (SERB) has exclusive jurisdiction over appellant's R.C. Chapter 4117 claims. Appellant lacked standing to initiate or independently conduct arbitration pursuant to the CBA between the Board and the Association. Finally, appellant's constitutional rights have not been violated by not being permitted to have her own counsel represent her at arbitration between the Association and the Board.

{¶5} The judgment of the Ashtabula County Court of Common Pleas is affirmed.

## Substantive and Procedural History

{¶6} Appellant was employed as a guidance counselor by the Board. Appellant is not a member of the Association, however, pursuant to R.C. 4117.04, the Association serves as the exclusive collective bargaining representative for Board employees. Article XVI of the CBA governing the Association and the Board contains grievance procedures for resolving disputes arising under the terms of the CBA.

**CBA Grievance Procedure:**

{¶7} The grievance procedure as provided in the CBA is a multi-step process. Level One involves the aggrieved bargaining unit member first discussing the matter with the member's immediate supervisor, the principal, or treasurer. If the response given at Level One is unsatisfactory, the grievant may proceed to Level Two by advancing the grievance to the superintendent. If the grievant is not satisfied with the Level Two

3

response, the Association may advance the grievance to Level Three, an optional mediation step.

{¶8} The CBA provides that "If the mediation effort is unsuccessful or is not initiated and the bargaining unit member remains aggrieved, *the Association may proceed to Level Four.*" (Emphasis added). To initiate the Level Four arbitration procedure, if "the bargaining unit member remains aggrieved, *the Association shall notify the Board in writing of its intent to submit the grievance to arbitration.*" (Emphasis added). The CBA provides that in arbitration proceedings, the "aggrieved shall be represented by the Association." The decision of the arbitrator is binding and the parties – the Association and the Board – are to share the costs of arbitration. Finally, the CBA provides that the Association "shall have the exclusive right to determine whether to proceed to the arbitration step of the procedure."

**Appellant's grievance:**

{¶9} In September 2020, appellant submitted a Level One and a Level Two grievance without resolution satisfactory to her.

{¶10} Appellant proceeded through the first two levels of the grievance procedure without Association involvement, as the CBA contemplates and allows. Neither appellant nor the Association sought to advance the grievance to the Level Three optional mediation. After the denial of her grievance at Level Two, appellant sent the Association a letter requesting that her grievance be advanced to Level Four. Her letter stated that pursuant to Article XVI(C) of the CBA, she intended to "respectfully request that the Ashtabula Area Teachers' Association notify the Board of Education of my intent to submit the grievance to arbitration * * *." She further said that:

4

pursuant to Ohio Revised Code § 4117.03[(A)](5), I invoke my right to adjust my own grievance in the arbitration and plan to retain my own counsel to represent me in the remainder of these proceedings without the intervention of the bargaining representative, with the understanding that a bargaining representative has the right to be present at the adjustment. In other words, I am not requesting any financial support, representation, or services from the Union in this matter *other than submitting the notice and arbitration demand*. (Emphasis added).

{¶11} The Association agreed to advance her grievance to Level Four arbitration but denied appellant's request to retain her own counsel to represent her at the arbitration. In support of the decision to deny her request for her own counsel, the Association determined that "pursuant to the contract she seeks to enforce via the grievance process, the [Association] will provide an advocate to present Ms. Kolkowski's case at arbitration and only that advocate will act as her representative during the arbitration." The Association cited Article XVI(C) requiring that the aggrieved person be represented by the Association at arbitration proceedings.

**Appellant's lawsuit:**

{¶12} Appellant sued appellees in the Ashtabula County Court of Common Pleas seeking a declaration that she has the right to retain her own attorney to represent her at arbitration without Association involvement. The Association and the Board each filed a Motion to Dismiss and appellant filed an Amended Complaint in which she modified certain portions of the original Complaint and added the OEA as an additional defendant.

{¶13} Appellant's Amended Complaint contained three counts seeking: (1) a declaratory judgment pursuant to 42 U.S. C. 1983 and R.C. 2721.03 that she was entitled to retain her own counsel for "arbitrating her grievance under the CBA"; (2) injunctive relief pursuant to 42 U.S.C. 1983 to enjoin the Association from requiring her to accept the

5

Association's counsel for arbitration; and (3) damages, costs, and attorney fees pursuant to 42 U.S.C. 1983 on the basis that the Board and the Association, acting under color of state law, "purport to be acting pursuant to the exclusive representation provisions of R.C. 4117.04-05."

{¶14} The Board filed a Motion to Dismiss the Amendment Complaint and the Association and OEA filed a Joint Motion to Dismiss to the Amended Complaint. Appellant responded, appellees each filed a reply, and appellant filed a sur-reply. On October 5, 2021, the trial court granted appellees' motions to dismiss pursuant to Civ.R. 12(B)(1) and (6). Appellant timely filed this appeal raising two assignments of error.

## Assignments of Error and Analysis

{¶15} Appellant's assignments of error state:

{¶16} "[1.] The trial court erred by applying the U.S. Supreme Court's holding in *Minnesota State Bd. For Community Colleges v. Knight*, 465 U.S. 271, 104 S. Ct. 1058, 79 L.Ed 2d 299 (1984) to this case, which is factually distinct."

{¶17} "[2.] The Trial Court Erred by Not Properly Applying Ohio Law, Including *Johnson v. Metro Health Medical Centr.*, 8th Dist. Cuyahoga No. 79403, 2001 WL 1685585, (Dec. 20, 2001) and this Court's Decision in *Gaydosh v. Trumbull County*, 94 N.E. 3d 932, 2017-Ohio-5859 (11th Dist. 2017)."

{¶18} Appellant argues that she has a constitutional right to retain and be represented at arbitration by her own counsel arising from the Due Process Clause of the Fifth and Fourteenth Amendments. She also claims that she has First Amendment rights to speak through the counsel of her own choosing, to avoid compelled speech by unwanted counsel, and to choose not to associate with a particular group. Finally,

6

appellant argues that R.C. 4117.03(A)(5) confers upon her the right to "[p]resent grievances and have them adjusted without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of the collective bargaining agreement then in effect and as long as the bargaining representatives have the opportunity to be present at the adjustment."

{¶19} "An appellate court's standard of review for a trial court's actions regarding a motion to dismiss is de novo." *Bliss v. Chandler*, 11th Dist. Geauga No. 6006-G-2742, 2007-Ohio-6161, ¶ 91. In reviewing a Civ.R 12(B)(6) ruling, any allegations and reasonable inferences drawn from them must be construed in the nonmoving party's favor. *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, ¶ 12. "[I]t must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought." *Id.* However, when reviewing a Civ.R. 12(B)(1) ruling "the court is not required to take the allegations in the complaint at face value." *Jones v. Ohio Edison Co.,* 11th Dist. No. 2014-A-0015, 2014-Ohio-5466, 26 N.E.3d 834, ¶ 7.

{¶20} In conducting our de novo review, there are three distinct issues that we will address in turn. First, whether the trial court had the jurisdiction to hear the claims that plaintiff raised relating to R.C. Chapter 4117. Second, whether appellant had standing to bring her constitutional and statutory claims. Third, whether the Association's denial of her request to retain and be represented at arbitration by her own counsel for arbitration violated appellant's constitutional and/or statutory rights.

**Jurisdiction of the Court:**

{¶21} Appellant bases her claims, at least in part, on R.C. Chapter 4117. Appellant claims that R.C. 4117.03(A)(5) confers upon her the right to have her grievance adjusted without Association intervention. She claims that the Association violated this right by refusing to allow her to retain and be represented at arbitration by her own attorney.

{¶22} It is well established that the State Employment Relations Board (SERB) has exclusive jurisdiction over claims arising from R.C. Chapter 4117. SERB's exclusive jurisdiction to resolve unfair labor practices is vested in two areas: (1) where a party files charges with SERB alleging an unfair labor practice under R.C. 4117.11; and (2) where a complaint brought in a common pleas court alleges conduct that constitutes an unfair labor practice as enumerated in R.C. 4117.11. *State ex rel. Cleveland v. Sutula*, 127 Ohio St.3d 131, 2010-Ohio-5039, ¶ 16. "If a party asserts claims that arise from or depend on the collective bargaining rights created by R.C. Chapter 4117, the remedies provided in that chapter are exclusive." *Franklin Cty. Law Enf't Assn. v. Fraternal Order of Police, Capital City Lodge No. 9,* 59 Ohio St.3d 167, 572 N.E.2d 87 (1991) paragraph two of the syllabus. "'SERB has exclusive jurisdiction over matters within R.C. Chapter 4117 in its entirety, not simply over unfair labor practices claims.'" *Sutula*, at ¶ 20, quoting *Assn. of Cleveland Fire Fighters, Local 93 of the Internatl. Assn. of Fire Fighters v. Cleveland*, 156 Ohio App.3d 368, 2004-Ohio-994, 806 N.E.2d 170, ¶ 12 (8th Dist.).

{¶23} In part, Appellant alleges that appellees violated her rights under R.C. 4117.03(A)(5) by not allowing her to retain her own counsel for arbitration. R.C. 4117.11(B) provides that "[i]t is an unfair labor practice for an employee organization, its agents, or representatives, or public employees to: (1) restrain or coerce employees in

8

the exercise of the rights guaranteed in Chapter 4117 of the Revised Code." Therefore, this aspect of appellant's claim falls within the scope of R.C. 4117.11(B)(1) and is within the exclusive jurisdiction of SERB.

{¶24} However, appellant has also asserted claims under 42 U.S.C. 1983 alleging that appellees' application of R.C. 4117.03(A)(5) and the CBA has violated her constitutional rights. In *Gibney v. Toledo Bd. of Educ.*, 40 Ohio St.3d 152, 532 N.E.2d 1300 (1988), the Ohio Supreme Court held that parties filing actions under Section 1983 are not required "to exhaust any administrative remedies provided in R.C. 4117.01 et seq. prior to obtaining relief in the court of common pleas." *Id.* at 153. To hold otherwise would force plaintiffs filing state court Section 1983 claims to "comply with a requirement that is entirely absent from civil rights litigation of this sort in federal courts." *Id.* at 156.

{¶25} We therefore conclude that appellant's claim as to the application of R.C. 4117.03(A)(5) falls within the exclusive jurisdiction of SERB and that the trial court had subject matter jurisdiction only over appellant's Section 1983 claims pursuant to *Gibney*.

**Standing:**

{¶26} We next turn to whether appellant had standing under the CBA to bring her Section 1983 claims. We have determined that SERB has exclusive jurisdiction over R.C. Chapter 4117 claims. However, appellant has also asserted that the application of the CBA violated her constitutional rights. Although her claims implicate R.C. Chapter 4117, we must determine whether appellant has standing under the CBA to assert these constitutional violations. As *Gibney* demonstrates, when a party asserts a denial of constitutional rights under color of law by a state actor, the party need not exhaust administrative remedies through SERB.

9

**{¶27}** Appellant's standing to assert these constitutional claims are rooted in the application of the CBA and R.C. Chapter 4117. She argues that appellees interpretation of the CBA has violated her constitutional rights. To address her standing, we must therefore apply R.C. 4117.03(A)(5) and the CBA to determine if she is a real party in interest.

**{¶28}** "The threshold requirement of standing depends upon whether the plaintiff has a real interest in the subject matter of the action." *Natl. City Real Estate Serv. L.L.C. v. Shields*, 11th Dist. Trumbull No. 2012-T-0076, 2013-Ohio-2839, ¶ 20. *State ex rel. Dallman v. Court of Common Pleas, Franklin Cty.*, 35 Ohio St.2d 176, 298 N.E.2d 515 (1973), syllabus. If a claim is asserted by a party who is not the real party in interest, then the party lacks standing to prosecute the action. *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 77, 701 N.E.2d 1002 (1998). A lack of standing challenges the capacity of a party to bring an action but does not challenge the subject matter jurisdiction of the court. *Id.* Accordingly, a motion to dismiss for lack of standing is properly brought pursuant to Civ.R.12(B)(6) for failure to state a claim upon which relief can be granted. *Brown v. Columbus City Schools Bd. Of Edn.,* 10th Dist. No. 08AP–1067, 2009-Ohio-3230, ¶ 4.

**{¶29}** R.C. 4117.09(A) provides that the "parties to any collective bargaining agreement shall reduce the agreement to writing and both execute it." In this case, the Board and the Association are the "parties to" the CBA; appellant is not. R.C. 4117.09(B) provides that the CBA "shall contain a provision that: (1) provides for a grievance procedure which may culminate with final and binding arbitration of unresolved grievances * * *. A party to the agreement may bring suits for violation of agreements or the enforcement of an award by an arbitrator in the court of common pleas of any county

10

wherein a party resides or transacts business." Again, the parties to the CBA are the Board and the Association. Therefore, appellant does not have the right to negotiate the terms or procedures of the CBA which may include "final and binding arbitration of unresolved grievances." R.C. 4117.09(B). Nor can appellant "bring suits for violation of agreements or the enforcement of an award by an arbitrator in the court of common pleas * * *." R.C. 4117.09(B).

{¶30} Next, R.C. 4117.03(A)(5) provides that public employees have the right to "[p]resent grievances and have them adjusted without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of the collective bargaining agreement then in effect and as long as the bargaining representatives have the opportunity to be present at the adjustment."

{¶31} This statute plainly provides that an employee has the right to have grievances adjusted without the intervention of the bargaining unit "as long as the adjustment is not inconsistent with the terms of the collective bargaining agreement." R.C. 4117.03(A)(5). In this case, the CBA provides that the aggrieved party "shall be represented by the association" at a Level Four arbitration. Therefore, appellant's demand to retain her own attorney to represent her at arbitration without Association involvement would be an adjustment that is "inconsistent with the terms of the collective bargaining agreement * * *." R.C. 4117.03(A)(5).

{¶32} This court recently addressed a similar standing question in *Staple v. Ravenna*, 11th Dist. Portage No. 2021-P-0070, 2022-Ohio-261. In *Staple,* the appellant was a bargaining unit member who sought to retain private counsel for arbitration arguing that R.C. 4117.03(A)(5) granted him this right. *Id.* at ¶ 2.

11

Case No. 2021-A-0033

**{¶33}** All parties agreed that under the applicable CBA, only the union, and not Staple individually, had the right to initiate arbitration. *Id.* at ¶ 3. This Court concluded that Staple's claims were entirely dependent on the collective bargaining rights created by R.C. Chapter 4117. *Id.* at ¶ 17. We also held that Staple did not have standing to bring his claim and that there was no constitutional right to seek adjustment of the claim. *Id.* at ¶ 18.

**{¶34}** This Court noted that "though there is little case law directly addressing Mr. Staple's exact issue, Ohio courts have often addressed a closely related matter: the issue of standing when a union member seeks reversal of an already arbitrated matter." *Id.* at ¶ 25, citing *Leon v. Boardman Twp.,* 100 Ohio St.3d 335, 2003-Ohio-6466, 800 N.E.2d 12, ¶ 17 (holding that an employee "whose employment is governed by a collective bargaining agreement that provides for binding arbitration will generally be deemed to have relinquished his or her right to act independently of the union in all matters related to or arising from the contract, except to the limited extent that the agreement explicitly provides to the contrary."); *Gaydosh v. Trumbull Cty.*, 2017-Ohio-5859, 94 N.E.3d 932 (11th Dist.) (holding that "once an employee subject to a collective bargaining agreement authorizes his or her union to pursue a grievance, the cause of action belongs to the union, and the employee lacks standing to prosecute the case.").

**{¶35}** We held that under the CBA, Staple "had no choice but to authorize the Union to turn the grievance over to the Union. * * * Since Mr. Staple is not a party to the CBA and the CBA does not grant him the right to independently arbitrate the matter, he does not have standing to seek an order compelling arbitration between the two parties to the CBA." *Staple* at ¶ 28; *See also Johnson v. Metro Health Medical Centr.*, 8th Dist.

Cuyahoga No. 79403, 2001 WL 1685585, *2 (Dec. 20, 2001); *Bailey v. Beasley,* 10th Dist. Franklin No. 09AP-682, 2010-Ohio-1146, ¶ 19; *Morrison v. Summit Cty. Sheriff's Dept.,* 9th Dist. Summit No. C.A. 20313, 2001 WL 688895.

{¶36} In the present matter, appellant has also argued that the trial court did not properly apply *Johnson v. Metro Health Med. Ctr., supra.* We disagree. *Johnson's* holding as to public employees' statutory rights under R.C. 4117.03(A)(5) similarly states that when "the employee chooses union representation, that employee lacks standing on all matters including an appeal." *Id.* at *2. The *Johnson* court said that

> this conclusion recognizes the necessity of subordinating the individual interest of a complainant to the collective good of a greater body. A union is no more than its members. By choosing to pursue this matter with the benefit of union representation under the collective bargaining agreement Johnson sacrificed her right as a party in interest, and the union obtained the right to pursue this matter for the benefit of all employees under the collective bargaining agreement. Johnson's union, not Johnson, was the sole party in interest adverse to MetroHealth.

*Id.*

{¶37} Appellant insists that she, unlike in the above cases, has not subordinated her claim to the Union. She states that she has specifically rejected Association representation throughout the grievance process and that she wanted to use and pay for her own counsel throughout the arbitration process.

{¶38} However, the CBA necessarily requires Association representation at the arbitration level. Under the CBA, appellant was free to, and did, act without Association representation at Level One and Level Two of the grievance process outlined in Article XVI, in accordance with R.C. 4117.03(A)(5). However, the Association has the "exclusive right to determine whether to proceed to the arbitration step of procedure." Next, if the Association determines that it wants to advance a grievance to arbitration, the Association

13

must make a demand for arbitration to the Board. Individual grievants are not permitted to notify the Board of their intent to submit a matter for arbitration. Finally, the CBA provides that in arbitration proceedings, the "aggrieved shall be represented by the Association." Appellant simply did not have the right to determine that she would advance any grievance to arbitration without explicit Association approval and representation.

{¶39} Appellant has also suggested that the CBA is ambiguous or vague and should be construed in her favor because it states that if "the bargaining unit member remains aggrieved, *the Association shall notify the Board in writing of its intent to submit the grievance to arbitration.*" (Emphasis added). Appellant says that the case "presents the unusual situation where Ms. Kolkowski had no hand in drafting or approving the CBA yet is bound to it by statute." This situation is not unusual because appellant is not a party to the CBA. The Association and the Board are. They are the parties to renegotiate the contract or to have an arbitrator determine the application of any potentially ambiguous provisions.

{¶40} Notwithstanding appellant's "unusual situation," the language in the CBA is plain. The heading Article XVI, Section F states "**Rights of the Grievant and the Association**." That section provides that the Association has the "exclusive right to determine whether to proceed to the arbitration step of the procedure." The heading for Article XVI, Section C states "**Procedure.**" That section provides a procedural description of the grievance process and states that if "the bargaining unit member remains aggrieved, *the Association shall notify the Board in writing of its intent to submit the grievance to arbitration.*" (Emphasis added). Section C does not confer upon the bargaining unit member the right to proceed to arbitration if the grievance is not resolved

14

Case No. 2021-A-0033

at Level Two. Instead, it states the procedural requirements that follow if the bargaining unit member remains aggrieved. One of those procedural requirements is that the Association, if it has determined to do so in accordance with its rights under Section F, must notify the Board in writing of the intent to submit the matter to arbitration. The grievant has no right to unilaterally notify the Board of his or her intent to proceed to arbitration because the grievant has no right to proceed to arbitration.

{¶41} Even appellant's letter to the Association contemplates the necessary subordination of her arbitration claim to the Association. She acknowledged the language of the CBA because she submitted the letter to the Association to "respectfully request that the Ashtabula Area Teachers' Association notify the Board of Education of my intent to submit the grievance to arbitration * * *." She further acknowledged the CBA's requirement that she submit her claim to the Association when she attempted to disclaim any Association representation "*other than submitting the notice of arbitration demand.*" (Emphasis added). As in *Staple*, appellant "had no choice but to authorize the Union to turn the grievance over to the Union." *Staple,* 2022-Ohio-261 at ¶ 28.

{¶42} Because appellant is not a party to the CBA and the CBA does not grant her the right to independently arbitrate this matter, she lacks the standing to compel the Board or the Association to allow her to arbitrate her claim with her own counsel.

**Appellant's constitutional rights under the Contract:**

{¶43} The Association's denial of appellant's request to retain her own counsel for arbitration did not violate appellant's constitutional or statutory rights. Appellant claims that the denial of her right to retain her own counsel violated her statutory right to adjust her grievance under R.C. 4117.03(A)(5). However, we have already determined that

15

SERB retains exclusive jurisdiction over claims brought exclusively under R.C. Chapter 4117. Therefore, neither the court below nor this court has subject matter jurisdiction to pass on her statutory claim under R.C. 4117.03(A)(5).

{¶44} Appellant's constitutional claims are also without merit. Appellant argues that the clause in the CBA requiring her to use Association representation for arbitration violates the constitutional rights of free speech, free association, and her right to retain the counsel of her choosing.

{¶45} In *Smith v. Arkansas State Hwy. Emp., Local 1315*, 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979), a public employees' union argued that the union's First Amendment rights were abridged because the employer required employee grievances to be filed directly with the employer and refused to recognize union communication of employee grievances. *Id.* at 465. However, the U.S. Supreme Court disagreed saying that "the First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it." *Id.*

{¶46} "The First Amendment protects the right of an individual to speak freely, to advocate ideas, to associate with others, and to petition [the] government for redress of grievances" *Id.* at 464. However, the court said that the public employer's action was "simply to ignore the union. That it is free to do." *Id.* at 466.

{¶47} In *Minnesota State Bd. for Community Colleges v. Knight*, 465 U.S. 271, 104 S.Ct. 1058, 79 L.Ed.2d 299 (1984), the challenged conduct was "the converse of that challenged in *Smith*." *Id.* at 286-287. In *Knight*, the government engaged in "meet and negotiate" meetings regarding terms and conditions of employment and to engage in "meet and confer" meetings on matters outside the scope of mandatory negotiations. *Id.*

16

Case No. 2021-A-0033

at 275. These meetings took place "with the union and not with individual employees." *Id.* at 287. However, the court found that the "applicable constitutional principles are identical to those that controlled in *Smith*. When government makes general policy, it is under no greater constitutional obligation to listen to any specially affected class than it is to listen to the public at large." *Id.*

{¶48} Therefore, the court said the Minnesota statute requiring public employees to select someone to represent them at these sessions was "rational for the state" to do so. *Id.* at 291. The court noted that the goal of "reaching agreement" and "basing policy decisions on consideration of the majority view of its employees makes it reasonable for an employer to give only the exclusive representative a particular formal setting in which to offer advice on policy." *Id.* at 291-292.

{¶49} In *Thompson v. Marietta Ed. Assn.,* 972 F.3d 809 (6th Cir. 2020), Thompson was not a member of the union, but was a schoolteacher employed by the Marietta High School and bound by the agreement between the school board and the union. *Id.* at 812. She filed a 42 U.S.C. 1983 suit against the union and the board arguing that Ohio's exclusive public sector union representation violated the First Amendment because the union was her exclusive statutory representative for purposes of bargaining with her employee, but she did not agree with the union's policies or beliefs. *Id.*

{¶50} The court noted that public employers must bargain over all matters pertaining to wages, hours, or terms and other conditions of employment pursuant to R.C. 4117.08(A) and that almost all other topics are the subject of permissive bargaining pursuant to R.C. 4117.08(C). *Id.* Thompson argued that R.C. Chapter 4117 violated her

17

rights to be free from compelled speech, compelled association, and infringed on her right to freely communicate with her employer.

**{¶51}** The court said that the "primary precedent blocking Thompson's way is *Knight*." *Id.* at 813. Following *Knight*, the court concluded that its holding extended beyond merely "meet and confer" and "meet and negotiate" sessions and that there is "no basis for concluding that the result should be different where the union engages in more traditional collective-bargaining activities." *Id.*

**{¶52}** "In *Knight*, the Court framed the question presented in broad terms: whether the 'restriction on participation in the nonmandatory-subject exchange process violates the constitutional rights of professional employees within the bargaining unit who are not members of the exclusive representative and who may disagree with its views.'" *Id.*, quoting *Knight, supra,* at 273. Therefore, the court concluded that Thompson's compelled speech arguments fell within the broad holding of *Knight. Id.* The court also relied on *Smith, supra*, for the proposition that the employer had no obligation to listen, respond, or bargain with Thompson and that the employer's decision to bargain with the union would not violate her rights.

**{¶53}** The necessary question for this Court to resolve is whether arbitration is one of the "more traditional collective-bargaining activities" that *Thompson* described as falling under the ambit of *Knight.*

**{¶54}** Appellant claims her right to have her own counsel represent her at arbitration without Association intervention is based on a right to counsel in civil matters. *See Anderson v. Sheppard*, 856 F.2d 741, 748 (6th Cir.1988). However, appellant's right to participate in arbitration, individually or through counsel, is entirely contractual.

18

Case No. 2021-A-0033

Although she claims that arbitration is her only forum to be heard, she is missing the point that it is the CBA itself that empowers her to pursue employment grievances at all. As *Knight* provides, the government is not required to listen to her in the context in which she demands. Instead, the Board has the right to choose not to listen to her, which it has through its negotiation of the arbitration terms in the CBA. Without the CBA, appellant would have no right to pursue any grievance with her employer at all.

{¶55} She also does not have a constitutional right to her own lawyer at her own expense to represent her at arbitration without Association intervention for the same reason. Her lawyer is merely her agent, and her lawyer has no additional right to speak in an arbitration setting than she would individually. Of course, appellant could retain a personal lawyer to provide legal advice to her during an arbitration proceeding, as is her right as an American citizen. Consequently, if she does, R.C. Chapter 4117 nor the CBA implicate this right. We merely speak of her individual right to retain a lawyer to advise and assist her without controlling or participating directly in the arbitration. This individual right does not extend to require the Association or the Board to allow her to have her own counsel prosecute the arbitration without Association involvement as she requests.

{¶56} Moreover, SERB has long recognized that a union's duty to represent its members requires balancing individual and collective interests. While it occurs most often in bargaining, it "also may be a legitimate concern in resolving grievances and other contract administration issues. Given this essential component of an exclusive representative's function, flexibility and deference must be accorded the union in its efforts to seek benefits and enforcement for the unit as a whole, even though the desires of individual employees or groups of employees within the unit may go unfulfilled." *In re*

19

*AFSCME, Local 2312,* SERB 89-029, 1988 WL 1519971, at * 8 (Sept. 29, 1988). Indeed, in the present matter, appellant's grievances may have an effect on other employees similarly situated to her. At least some portion of her grievance relates to the interpretation of her job description, which could impact other Association members in the same position. Therefore, upon her request for arbitration, her individual right to pursue the grievance abated and the Association became the sole party in interest pursuant to the CBA. To determine otherwise would subordinate the Association's role as the exclusive representative of the bargaining unit members and would inappropriately privilege and empower individual voices within the unit.

{¶57} The CBA allows appellant to initiate the grievance process without Association involvement. However, the CBA clearly terminates that right at the arbitration step. This is in line with the statutory framework set forth in R.C. Chapter 4117 which allows the parties to the CBA, the Board and the Association, to negotiate the parameters of arbitration procedures.

{¶58} The Ohio legislature enacted R.C. Chapter 4117 with certain public policy interests in mind. The overriding policy behind Chapter 4117 is clearly articulated as "promoting orderly and constructive relationships between all public employers and their employees to the extent not contrary to Chapter 4117." Ohio Adm.Code 4117-1-01(B). We will not usurp the legislature's policy decisions with respect to how to balance these interests.

{¶59} Although appellant's right to have her own representation at arbitration without Association involvement to make her own case at arbitration is distinct from the "meet and negotiate" and "meet and confer" statue reviewed in *Knight*, the principle of

20

*Knight,* as described in *Thompson*, leads to the same conclusion. We conclude that arbitration is one of the "more traditional collective bargaining activities." *Thompson*, 972 F.3d at 813. The Board has negotiated a CBA with the Association and that CBA does not allow individual employees to represent themselves at arbitration. The Board listened to appellant as the CBA required at Level One and Level Two of the grievance process. Under *Smith* and *Knight*, the Board is under no obligation to listen to appellant at the arbitration level.

{¶60} In *Knight,* the effect of the ruling was that the government was not obligated to listen to an individual union member. Under *Thompson*, the effect of the ruling was that an individual must be subjected to the CBA and exclusive union representation. In this case, the CBA creates an exclusive arbitration representation clause preventing individuals from pursuing their own arbitration with their own counsel. The effect is of the same nature as in *Knight* and *Thompson* – a subordination of the right to act as an individual within a CBA negotiated between a public sector union and a public employer.

{¶61} As discussed above, arbitration is a contractual means of resolving grievances and is part of the bargaining relationship between the employer and the union. R.C. 4117.09(B)(1) requires that public employers and unions execute a written CBA which "[p]rovides for a grievance procedure which may culminate with final and binding arbitration of unresolved grievances * * *." The grievance procedure is a negotiated procedure between the Association and the Board and does not statutorily require binding arbitration. The right to arbitration is contractual and is not a statutory or constitutional right. To the extent that this CBA does contain a collectively bargained binding arbitration

21

procedure, that procedure specifically requires that grievants submit their grievances to the Association and submit to Association representation.

{¶62} Appellant frames this issue as though her constitutional rights supersede any interpretation of the CBA which would limit those rights. This characterization miscasts the question. Appellant cannot compel the Board to listen to her or her chosen representative. *See Knight, supra.* The CBA at issue does not violate appellant's right of association. *See Thompson, supra.* Appellant has no constitutional right to counsel of her choosing at a contractually governed arbitration. *See* R.C. 4117.09; *In re AFSCME, Local 2312, supra.*

{¶63} It is incongruous with the principles of collective bargaining for appellant to argue that she has rights to free speech and due process which entitle her to be represented by the counsel of her choosing at a proceeding which she herself is not legally entitled to initiate. It would be incongruous for appellant to possess a constitutional right to hire her own attorney for an arbitration proceeding which is an optional portion of a negotiated grievance procedure between the Association and the Board. Finally, it is incongruous for appellant to individually assert a right to enforce the CBA in arbitration, the result of which may well affect the rights of other Association members under the CBA.

{¶64} Based on the holdings in *Knight, Smith,* and *Thompson*, we hold that the Association and the Board, through the CBA, have not infringed upon appellant's Constitutional rights.

22

{¶65} For the forgoing reasons, appellant's assignments of error are without merit and the judgment of the Ashtabula Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, P.J.,

MARY JANE TRAPP, J.,

concur.

Case No. 2021-A-0033